STATE OF NORTH CAROLINA v. FRED HOWARD COFFEY, JR.

No. 613A87

(Filed 1 March 1990)

**1. Criminal Law § 396 (NCI4th) — capital trial — court's comments on nature of charge — failure to mention lesser included offenses**

Where the trial court in a first degree murder case informed prospective jurors of the nature of the charge against defendant and outlined the procedures followed in a trial of a capital case, the court's failure to mention second degree murder as a possible verdict did not amount to an expression of opinion that second degree murder would not be a possible verdict.

**Am Jur 2d, Homicide §§ 460, 469.**

**2. Criminal Law § 34.4 (NCI3d) — evidence of other crimes — when admissible**

Evidence of other offenses is admissible so long as it is relevant to any fact or issue other than the character of the accused. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Evidence §§ 320, 321.**

**3. Criminal Law § 34.1 (NCI3d) — evidence of other crimes — exception to admissibility**

Relevant evidence of other crimes, wrongs or acts by a defendant is admissible under Rule 404(b) subject to an exception requiring its exclusion if its only probative value is to show that defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

**Am Jur 2d, Evidence §§ 320, 321.**

**4. Criminal Law § 34.7 (NCI3d) — prior indecent act by defendant — admissibility to show motive**

In a prosecution of defendant for the murder of a ten-year-old girl, evidence that defendant admitted to the mother of a three-year-old girl and her minister that he masturbated in the presence of the three-year-old girl at a time prior to the death of the victim was admissible to support the State's theory of defendant's motive for the murder.

**Am Jur 2d, Evidence §§ 324, 325.**

5. **Criminal Law § 34.7 (NCI3d) — felony murder — prior indecent act by defendant — admissibility to show felonious intent for kidnapping**

In a prosecution of defendant for first degree murder of a ten-year-old girl allegedly committed after premeditation and deliberation and during the perpetration of the felony of kidnapping, evidence that defendant admitted to the mother of a three-year-old girl and her minister that he masturbated in the presence of the three-year-old girl at a time prior to the death of the victim was relevant and admissible to support the State's theory of kidnapping that defendant took the victim for the purpose of facilitating his commission of the felony of taking indecent liberties with a child. N.C.G.S. § 14-39(a).

**Am Jur 2d, Evidence §§ 324, 325.**

6. **Criminal Law § 34.7 (NCI3d) — admission of prior indecent act by defendant — exclusion of others — discretion under Rule 403**

The trial court properly exercised its discretion under N.C.G.S. § 8C-1, Rule 403 in allowing testimony with regard to one prior incident in which defendant was alleged to have taken indecent liberties with a child and in excluding, as needlessly cumulative, testimony that defendant had taken indecent liberties with two other children.

**Am Jur 2d, Evidence §§ 324, 325.**

7. **Criminal Law § 73.2 (NCI3d) — statements of child — admission for limited purposes — not inadmissible hearsay**

A mother's testimony that her three-year-old daughter told her that defendant had masturbated in front of her was not inadmissible hearsay where it was admitted for the limited purpose of explaining the mother's subsequent conduct. Nor was testimony by the mother's pastor that the mother had told him about the child's statement concerning defendant inadmissible hearsay where it was admitted for the limited purpose of corroborating the prior testimony of the mother.

**Am Jur 2d, Evidence § 500.**

8. **Homicide § 21.6 (NCI3d) — felony murder — kidnapping — sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction of first degree murder of a ten-year-old girl under

STATE v. COFFEY

[326 N.C. 268 (1990)]

the theory that the murder was committed during the perpetration of the felony of kidnapping.

**Am Jur 2d, Homicide § 72.**

9. **Criminal Law § 627 (NCI4th); Homicide § 21.5 (NCI3d) — first degree murder — identification evidence not inherently incredible**

The State's evidence was not inherently incredible so as to be insufficient to support defendant's conviction of first degree murder of a child under the theory of premeditation and deliberation because there was an extended period between the time the witnesses observed defendant with the victim at the crime scene and their identification at trial, or because the witnesses were very young and some of them viewed him at a distance, where each of the witnesses who positively identified defendant had the opportunity to observe him for varying lengths of time in full daylight at reasonably close range.

**Am Jur 2d, Homicide § 435.**

10. **Constitutional Law § 31 (NCI3d) — indigent defendant — sufficiency of funds allowed for textile science expert**

An indigent defendant was not denied the opportunity to rebut the State's evidence by the trial court's ruling allowing only $250 rather than the $500 requested for employment of a textile science expert where defense counsel indicated to the trial court at the hearing on defendant's motion that $250 would be a sufficient amount for retaining an expert in textile science for the purposes for which he sought the assistance of an expert; defendant's only specific assertion of the need for the expert was that such an expert "may well have testified that 90% of all vans and autos have factory installed carpets with fibers similar to those found on the victim," but defendant failed to suggest why the amount allowed by the trial court was insufficient to allow him to discover any such evidence and introduce it through an expert; and defendant thus failed to make the requisite showing of specific need for any more funds for the assistance of an expert in textile science than the trial court allowed for this purpose.

**Am Jur 2d, Criminal Law §§ 955, 1006.**

**11. Criminal Law § 73.3 (NCI3d)— intent to do future act—admissibility of victim's statements**

Testimony as to statements made by a child murder victim to two witnesses that she planned to go fishing with "a nice gray-haired man" on the day she disappeared was admissible under N.C.G.S. § 8C-1, Rule 803(3) as evidence of the victim's mental or emotional condition at the time she made the statements.

**Am Jur 2d, Evidence § 500.**

**12. Criminal Law § 146.1 (NCI3d)— exclusion of evidence—absence of formal offer—question not presented on appeal**

Defendant's contention that the trial court improperly excluded evidence tending to show that another person committed the crime charged and that the trial court erred by preventing his making a proper record of the excluded evidence for purposes of appellate review was not before the appellate court for review where the record shows that defendant never actually attempted to introduce any evidence tending to show that another person committed the crime charged because of a conscious election against introducing evidence in order to retain his right to make the last closing argument to the jury.

**Am Jur 2d, Evidence § 441; Trial §§ 128-131.**

**13. Criminal Law § 66.19 (NCI3d)— admissibility of identification testimony—pretrial hearing—exclusion of question about victim's clothing**

In a pretrial hearing on defendant's motion to suppress identification testimony in a murder trial, the trial court did not err in refusing to allow defendant to cross-examine an identification witness about the victim's clothing at the time he saw her with defendant since the court could properly limit defendant's cross-examination of the witness to issues concerning the reliability and admissibility of his identification of defendant. N.C.G.S. § 15A-977(a).

**Am Jur 2d, Evidence §§ 278, 371, 371.8, 372, 373, 1143.**

**14. Criminal Law § 66.18 (NCI3d)— identification testimony—suppression hearing—refusal to continue to obtain television tapes**

The trial court did not err in refusing to continue the voir dire hearing on the admissibility of identification testimony

until television tapes could be secured and presented by defendant to the court after several witnesses testified that they had seen the television broadcasts showing defendant before they identified him where a full inquiry was made as to the reliability of each witness's identification of defendant; each witness who had seen the broadcasts gave some description of what they had seen and said that the broadcasts had not influenced their identification of defendant; and the evidence supported the trial court's findings and conclusions that each witness identified defendant based upon his or her independent recollection of seeing defendant with the victim and was free from any possible taint from the television broadcasts.

Am Jur 2d, Evidence §§ 278, 371, 371.8, 372, 373, 1143.

**15. Criminal Law § 89.3 (NCI3d) — prior statements of witnesses — corroboration**

Prior statements of three witnesses concerning their observation of the victim and defendant at a lake on the day the victim was killed did not conflict with their trial testimony and were properly admitted as corroborative of their trial testimony. Any new information contained in a witness's prior statement but not referred to in his or her trial testimony may be admitted as corroborative evidence if it tends to add weight or credibility to that testimony.

Am Jur 2d, Evidence §§ 278, 371, 371.8, 372, 373, 1143.

**16. Criminal Law § 461 (NCI4th) — prosecutor's jury argument — matters not in evidence — no gross impropriety**

In a prosecution of defendant for murder of a ten-year-old girl, inferences drawn by the prosecutor in his jury argument concerning a prior incident of indecent liberties with a three-year-old girl were supported by the evidence. Furthermore, assuming arguendo that the evidence and inferences drawn therefrom did not support the prosecutor's arguments that defendant did not seek counseling after being confronted about the prior incident, that only one witness viewed him on television prior to identifying him when three actually did so, and that a potential witness was not called because he could not refute the State's evidence, the statements were not so grossly

improper that the trial court abused its discretion by failing to intervene ex mero motu.

**Am Jur 2d, Trial §§ 251, 258-262.**

**17. Criminal Law § 468 (NCI4th) — jury argument — God and providence — no gross impropriety**

The prosecutor's jury argument that it was "providential" that the police were able to turn up some of the evidence which they collected was used and understood as meaning "fortuitous" and was not improper. Furthermore, the prosecutor's remarks about God were not so grossly improper that the trial court abused its discretion by failing to intervene.

**Am Jur 2d, Trial §§ 251, 258-262.**

**18. Criminal Law § 1324 (NCI4th) — capital case — death penalty — writing signed by jury foreman — necessity for finding of insufficiency of mitigating circumstances**

The jury in a first degree murder case was erroneously permitted to recommend a sentence of death without returning a writing signed by the foreman on behalf of the jury showing, inter alia, that the mitigating circumstances were insufficient to outweigh the aggravating circumstances found as required by N.C.G.S. § 15A-2000(c)(3). Therefore, the sentence of death is vacated and the case is remanded for a new sentencing hearing even though the trial court gave correct oral instructions to the jury concerning the order and form of the issues the jury must answer in determining whether to recommend a sentence of death or life imprisonment.

**Am Jur 2d, Homicide §§ 541, 542, 546.**

APPEAL of right by the defendant from a judgment sentencing him to death upon his conviction for first-degree murder, entered by *Snepp, J.,* in the Superior Court, MECKLENBURG County, on 20 October 1987. Heard in the Supreme Court on 14 September 1989.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General,* for the State.

*Walter H. Bennett, Jr.,* for the defendant appellant.

MITCHELL, Justice.

The defendant was tried on a true bill of indictment at the 5 October 1987 Schedule A Criminal Session of Superior Court, Mecklenburg County, and was convicted of murder in the first degree. The jury recommended and the trial court entered a sentence of death. On appeal the defendant brings forward numerous assignments of error. We conclude that the defendant's trial and conviction were free from prejudicial error. We further conclude, however, that errors during the sentencing proceeding in this case require that the sentence of death be vacated and that this case be remanded to the Superior Court for a new sentencing proceeding under N.C.G.S. § 15A-2000.

The State's evidence at trial tended to show that the body of the ten-year-old victim, Amanda Ray, was found in a wooded area near a lake in Mecklenburg County on the afternoon of 19 July 1979. An autopsy revealed that her right eye was blackened and there were small bruises on the front and left lateral side of her neck. She had died of traumatic asphyxiation. Hair and fiber samples were removed from her body and from the crime scene. Microscopic examination revealed two blue fibers, eight animal hairs, and hair consistent with Amanda's head hair.

An extensive investigation was conducted during the months following Amanda's death in 1979. The investigation was reopened later, and the defendant, Fred Howard Coffey, Jr., was charged with murder and taken into custody in 1987.

The State's evidence tended to show that the victim, Amanda Ray, lived with her mother, Ann Aker, in the Woodbury Hills Apartments in Charlotte. Amanda's mother worked during the day and left the child at home. A neighbor, Shirley Burnett, looked after Amanda while her mother worked.

Several neighbors who were children at the time of Amanda's death testified for the State. Jerry Wayne Martin testified that he and Amanda went fishing at Briar Creek on 17 July 1979. While they were fishing, a tall skinny man with salt and pepper hair approached and spoke with them for fifteen to twenty minutes. Afterward, the man, who Jerry Martin testified was the defendant, walked off in the direction of the Jamestowne Apartments. The defendant's ex-wife testified that she and the defendant lived in those apartments at that time.

STATE v. COFFEY

[326 N.C. 268 (1990)]

Tanya Ross testified that she saw Amanda at the swimming pool of the Woodbury Hills Apartments talking with the defendant on 18 July 1979. Tanya saw Amanda leave the pool area and heard her tell the defendant that she would call her mother. Amanda's mother testified that Amanda called her at work that day. Amanda said she was going fishing with a nice gray-haired man, but her mother asked her not to go. In addition, Shirley Burnett told Amanda that she could not go fishing with the gray-haired man. When Amanda came back to the pool, Tanya noticed that Amanda had on blue jean cut-off shorts and a shirt. Tanya testified that Amanda then left with the defendant.

Pamela Dowd testified that on 18 July 1979, Amanda asked her if she wanted to go fishing with a man. Pamela could not go fishing, but she saw the man. She testified that the defendant was the man Amanda asked her to go fishing with. Later, Pamela saw a white van outside the apartment complex and heard Amanda say, "I will see you later."

Wendy Johnson testified that she saw Amanda and the defendant fishing on 18 July 1979. Amanda and the defendant were still fishing when Wendy left them.

Raymond Claiborne testified that he, his brother, and his mother went fishing at a lake on 18 July 1979. At approximately 1:30 or 2:00 p.m., he saw a light blue van pull up to the lake and he saw the defendant and a girl. The girl was wearing shorts and a top. She sat in a chair and fished, but the defendant did not fish. Raymond observed the defendant, who was tall with mixed gray hair, and the girl for the rest of the afternoon. Between 5:00 and 6:00 p.m., Raymond and his family left the lake. As they left, they met a van at an intersection. The defendant was driving the van and waved them on, but he did not follow them as they left. The van the defendant was driving was a light blue Ford with horizontal blue stripes and a dark blue carpet on the inside.

Floyd Claiborne testified that he saw a man and a girl at a lake on 18 July 1979. The man was slender with gray hair. He stated that the man drove a van with a blue interior. Floyd identified the girl he saw at the lake as Amanda Ray. He testified that the defendant resembled the man with Amanda.

Mabel Tanner, Raymond and Floyd's mother, testified that she saw the defendant driving a van at the lake on 18 July 1979. She got a good look at his face at that time.

STATE v. COFFEY

[326 N.C. 268 (1990)]

Shortly after Amanda's body was found at the lake, police officers spoke with the witnesses who had seen her there on 18 July 1979. An artist made a composite drawing of the suspect and the van the witnesses had seen, based upon their descriptions. Thereafter, the composite drawing was published in newspapers.

Having seen the composite drawing in a newspaper, Janet Ashe called the police in July of 1979. She told the police that she believed the man in the drawing was Fred Coffey, the defendant. Janet Ashe knew the defendant well. At times she had let him take her children to the park for fishing or to the swimming pool. Further, she testified about an incident in May 1979 during which her three-year-old daughter said the defendant had masturbated in front of her.

The defendant's ex-wife, Edith Coffey, testified that they lived in the Jamestowne Apartments during July 1979. At that time, they owned a small dog which frequently stayed on their sofa. In September 1986, Ms. Coffey still owned the sofa, but the dog was dead. Hair samples were taken from the sofa, which had not been cleaned since 1976, in order to match them with hair samples taken from Amanda's body.

Edith Coffey also testified that the defendant had owned a white Dodge van in 1979, and the dog at times had been in the van. Police located the van, which the defendant no longer owned, through sales records. When they discovered that the carpet in the van was the original, they took fiber samples and vacuumed the carpet.

Dr. Louis Portis, an expert in trace evidence, compared the fibers and hairs taken from the sofa and van to those taken from Amanda's body several years earlier. Dr. Portis' examination revealed that twenty-three of the sixty-six dog hairs found in the van were consistent with hairs on Amanda's clothing when her body was found. Eight dog hairs from the sofa were consistent with hairs from the van and hairs found on Amanda's clothing when her body was discovered. The carpet fibers from the van matched the fibers found on Amanda's clothing and could have had a common origin.

On 25 September 1986, Officer R. H. Bernstein of the Mecklenburg County Police Department interviewed the defendant in the Caldwell County Jail. The defendant confirmed that he had owned a small dog and a white and blue Dodge van in 1979. With reference

STATE v. COFFEY

[326 N.C. 268 (1990)]

to Amanda Ray's death, the defendant told Bernstein "[y]ou can't prove it. You can't prove I am involved."

At trial, the defendant did not present evidence. The jury found the defendant guilty of first-degree murder based on the theory of premeditation and deliberation and the theory of felony murder during a kidnapping. A sentencing proceeding was then conducted, at the end of which the jury recommended a sentence of death. The trial court entered judgment sentencing the defendant to death.

Additional evidence and other matters relevant to the defendant's specific assignments of error are discussed at other points in this opinion.

[1] By an assignment of error, the defendant contends that the trial court committed reversible error in failing to tell prospective jurors during jury selection that a verdict finding him guilty of second-degree murder was a possibility. The defendant argues that this omission amounted to the trial court's expression of an opinion to the jury that second-degree murder would not be a possible verdict in this case.

When taken in context, however, the trial court's comments during jury selection merely informed the prospective jurors of the nature of the charge against the defendant and outlined the procedures followed in the trial of a capital case. The trial court's failure to mention lesser included offenses during jury selection did not amount to an expression of opinion. This assignment of error is without merit. *See State v. Smith*, 320 N.C. 404, 412, 358 S.E.2d 329, 333 (1987).

[2] By another assignment of error, the defendant contends that the trial court violated Rules 403 and 404(b) of the North Carolina Rules of Evidence by admitting evidence tending to show that the defendant masturbated in the presence of a three-year-old girl at a time prior to the death of the victim in this case. We do not agree.

At trial, Janet Ashe testified that she frequently allowed the defendant to take her children, as the defendant's wife was her best friend. Janet Ashe testified that in May 1979, she allowed her three-year-old daughter, Angel Ashe, to go off with the defendant. When Angel returned home, she disclosed that the defendant had masturbated in front of her. Janet Ashe confronted the defendant, and he admitted that he had exposed himself to the child

and masturbated in front of her. Janet Ashe demanded that the defendant speak with her pastor about seeking mental health counseling. Reverend James Hall, Janet Ashe's minister, testified that the defendant admitted to him that he had masturbated in front of the child but did not agree to seek counseling.

The defendant argues that Rule 404(b) of the North Carolina Rules of Evidence required the trial court to exclude evidence concerning the incident with Angel Ashe. N.C.G.S. § 8C-1, Rule 404(b) (1988). Under this assignment of error, the defendant challenges the admissibility of this evidence on the ground that its only relevance was its tendency to show the defendant's propensity to molest children. He argues that masturbation in front of a child is not sufficiently similar to the murder of a child to be relevant as evidence to show intent or motive involving the death of the victim in this case. Therefore, the defendant argues that Rule 404(b) required exclusion of such evidence.

As authority for his arguments under this assignment of error, the defendant relies upon *State v. McClain,* 240 N.C. 171, 81 S.E.2d 364 (1954), which he contends established a general rule of exclusion of evidence of a defendant's other crimes, wrongs or acts. As the trial of this case commenced after 1 July 1984, however, it was controlled by the North Carolina Rules of Evidence. Under Rule 404(b), it is not the case—as we *sometimes* stated under the authority of *McClain*—that evidence of other crimes, wrongs or acts by a defendant falls under a "general rule of exclusion" subject to certain "exceptions." *Cf.* 1 Brandis on North Carolina Evidence § 91 (3d ed. 1988) (reviewing the somewhat erratic nature of our statements of the applicable rule in our previous opinions and, at times, within the same opinion). It is clear now that, "as a careful reading of Rule 404(b) clearly shows, evidence of other offenses is *admissible* so long as it is *relevant to any fact or issue other than* the character of the accused." *State v. Weaver,* 318 N.C. 400, 403, 348 S.E.2d 791, 793 (1986) (quoting 1 Brandis on North Carolina Evidence § 91 (2d rev. ed. 1982) ) (emphasis added). " 'Relevant evidence' means evidence having any tendency to make the existence of *any fact* that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1988) (emphasis added).

[3] Recent cases decided by this Court under Rule 404(b) state a clear general rule of *inclusion* of relevant evidence of other crimes,

wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

> Thus, even though evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit them, it is admissible under Rule 404(b) so long as it also "is relevant for some purpose *other than* to show that defendant has the propensity for the type of conduct for which he is being tried."

*State v. Bagley*, 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988) (quoting *State v. Morgan*, 315 N.C. 626, 637, 340 S.E.2d 84, 91 (1986)). Additionally, our decisions, both before and after the adoption of Rule 404(b), have been "markedly liberal" in holding evidence of prior sex offenses "admissible for one or more of the purposes listed [in the Rule] . . . , especially when the sex impulse manifested is of an unusual or 'unnatural' character." 1 Brandis on North Carolina Evidence § 92 (3d ed. 1988).

Prior to ruling that evidence of the Angel Ashe incident was admissible, the trial court conducted a *voir dire* hearing. During that hearing the trial court heard the testimony of Janet Ashe concerning the incident involving her daughter Angel Ashe and the defendant. During the *voir dire* hearing the State also presented evidence tending to show that on two other occasions the defendant had taken young children to the lake and exposed himself to them and fondled their genitals. At the conclusion of the *voir dire* hearing, the trial court ruled that evidence concerning the incident involving Angel Ashe was not excludable under Rule 404(b), since it tended to show the intent of the defendant to commit an underlying felony supporting the felony murder theory and tended to show a possible motive of the defendant for killing the victim. The trial court also concluded that the probative value of such evidence outweighed its prejudicial effect and, as a result, its exclusion was not required by Rule 403 of the North Carolina Rules of Evidence. The trial court further ruled, however, that the evidence tending to show that the defendant had taken indecent liberties with two other children was inadmissible, because its cumulative effect, when taken with evidence of the incident involving Angel Ashe, would be more prejudicial than probative. We conclude that the trial

court correctly ruled that Rules 403 and 404(b) did not require the exclusion of evidence concerning the incident involving Angel Ashe.

[4] The defendant was tried for the first-degree murder of Amanda Ray upon both the theory of premeditation and deliberation and the theory that the killing was committed during the perpetration of a felony. Evidence of the incident involving Angel Ashe tended to show that when Janet Ashe and her minister confronted the defendant, he admitted he had masturbated in her child's presence. From this evidence, the jury reasonably could have inferred that the confrontation with Janet Ashe and her minister after the defendant had taken indecent liberties with Angel Ashe made the defendant particularly aware of and sensitive to the fact that any young child with whom he took indecent liberties might report him. The jury also could reasonably infer that such concerns provided the defendant with a motive for killing the victim in the present case.

Ordinarily, evidence tending to support a theory of the case being tried is admissible. *See State v. McElrath*, 322 N.C. 1, 366 S.E.2d 442 (1988). In the present case, the State was not required to prove a motive for the murder of the victim. "The existence of a motive is, however, a circumstance tending to make it more probable that the person in question did the act, hence evidence of motive is always admissible where the doing of the act is in dispute." 1 Brandis on North Carolina Evidence § 83 (3d ed. 1988). Here, evidence of the incident involving Angel Ashe tended to support the State's theory of the defendant's motive for the murder, and the trial court did not err in allowing its introduction for that purpose.

[5] The trial court also admitted evidence of the incident involving Angel Ashe as evidence tending to establish the defendant's guilt of first-degree murder under the felony murder theory. Specifically, the trial court ruled that such evidence tended to show that the defendant had the necessary specific intent to establish the underlying felony relied upon by the State in this case. We conclude that the trial court did not err in this regard.

The State tried this case upon the theory that the defendant had killed the victim Amanda Ray during the perpetration of the felony of kidnapping. In order to establish the underlying felony of kidnapping, the State was required to establish that the defend-

ant took the child victim for one of the purposes specified in N.C.G.S. § 14-39(a). The State contended at trial that the defendant had taken the victim for the purpose of facilitating his commission of the felony of taking indecent liberties with a child. N.C.G.S. § 14-202.1 (1986). The testimony of Janet Ashe and Reverend Hall that the defendant had admitted to them that he masturbated in the presence of three-year-old Angel Ashe was evidence from which the jury could reasonably infer that the defendant took the victim in this case with the intent to commit indecent liberties with her. In its final instructions, the trial court correctly instructed the jury that it should limit its consideration of this evidence, when considering the defendant's guilt under the felony murder theory, to the question of whether the defendant had such a felonious intent. The evidence was relevant and admissible for this purpose, even though it also tended to show the defendant's character and propensity to commit such acts. *State v. Weaver*, 318 N.C. at 403, 348 S.E.2d at 793; N.C.G.S. § 8C-1, Rule 404(b) (1988).

[6] The defendant also argues in support of this assignment of error that the probative value of evidence concerning the incident involving Angel Ashe was substantially outweighed by the danger of unfair prejudice it created, and that the trial court was required to exclude it for this reason under Rule 403 of the North Carolina Rules of Evidence. Whether to exclude evidence under Rule 403 is a matter left to the sound discretion of the trial court. *State v. Cotton*, 318 N.C. 663, 351 S.E.2d 277 (1987); *State v. Penley*, 318 N.C. 30, 347 S.E.2d 783 (1986); *State v. Mason*, 315 N.C. 724, 340 S.E.2d 430 (1986). The trial court exercised its discretion under Rule 403 and excluded, as needlessly cumulative, testimony to the effect that the defendant had taken indecent liberties with two other children. Evidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree. *State v. Mercer*, 317 N.C. 87, 94, 343 S.E.2d 885, 889 (1986). We conclude that the trial court did not abuse its discretion under Rule 403 by allowing testimony with regard to only one of the prior incidents in which the defendant was alleged to have taken indecent liberties with children. This assignment of error is without merit.

[7] By another assignment, the defendant argues that the trial court erred in admitting portions of the evidence tending to show that the defendant had masturbated in the presence of Angel Ashe, because those portions of the evidence were in the form of inad-

missible hearsay. On two occasions during the trial, the trial court allowed witnesses to testify concerning Angel's statements. On each occasion, the trial court allowed such testimony for a narrow and proper purpose. The trial court allowed Janet Ashe, Angel's mother, to testify as to what Angel had told her about the incident for the limited purpose of explaining Janet Ashe's subsequent actions. In addition, the trial court instructed the jury that it could not consider that part of Janet Ashe's testimony as evidence tending to prove the truth of Angel's statement to her mother. Later, Reverend James Hall, the Ashes' pastor, was allowed to testify that Janet Ashe had told him about Angel's statement to her concerning the defendant. This part of Reverend Hall's testimony was admitted for the limited purpose of corroborating the prior testimony of Janet Ashe. The defendant contends that such testimony by Janet Ashe and Reverend Hall should have been excluded as hearsay. We do not agree.

In this jurisdiction, " '[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (1988). When evidence of such statements by one other than the witness testifying is offered for a proper purpose other than to prove the truth of the matter asserted, it is not hearsay and is admissible. Specifically, "statements of one person to another are admissible to explain the subsequent conduct of the person to whom the statement was made." *State v. White*, 298 N.C. 430, 437, 259 S.E.2d 281, 286 (1979) (decided prior to the enactment of the North Carolina Rules of Evidence, N.C.G.S. Ch. 8C).

Janet Ashe testified that Angel's statement about the defendant made her angry and motivated her to call the police and confront the defendant and demand that he get counseling from her pastor, James Hall. That part of Janet Ashe's testimony concerning Angel's statement to her was admitted solely to explain Janet's subsequent conduct. The statement was not admitted to prove that the defendant masturbated in the presence of the child, but to show why Janet confronted the defendant. That part of Reverend Hall's testimony concerning Angel's statement was admitted solely for the purpose of corroborating Janet Ashe's testimony in this regard. Neither the testimony of Janet Ashe nor that of Reverend Hall concerning Angel's statement was hearsay for the purpose for which it was admitted. This assignment of error is without merit.

STATE v. COFFEY

[326 N.C. 268 (1990)]

[8] By his next assignment of error, the defendant argues that the evidence presented at trial was insufficient to support his conviction for first-degree murder based on the felony murder theory. He argues that without the testimony of Janet Ashe, there is no evidence that he took the victim with a felonious intent. The defendant reasons that Janet Ashe's testimony was inadmissible and, therefore, there was no admissible evidence of an underlying felony. As we have fully discussed, Janet Ashe's testimony that the defendant told her he had exposed himself and masturbated in the presence of her three-year-old daughter was admissible as evidence of the defendant's felonious intent in kidnapping the victim. Therefore, we conclude that there was sufficient evidence to support the defendant's conviction for first-degree murder under the felony murder theory. This assignment of error is without merit.

[9] In another assignment of error, the defendant contends that the evidence was insufficient to support his conviction for first-degree murder under the theory of premeditation and deliberation. Relying on *State v. Miller*, 270 N.C. 726, 154 S.E.2d 902 (1967), the defendant argues that the evidence at trial was insufficient to support his conviction because the testimony of all of the witnesses who purported to identify him as the man with the victim was inherently incredible. He contends this is so because of the extended period between the time when the witnesses observed him at the scene of the crime and their identification of him at trial and because the witnesses were very young and some of them viewed him at a distance. We do not agree.

In *State v. Cox*, 289 N.C. 414, 422-23, 222 S.E.2d 246, 253 (1976), we pointed out that our holding in *Miller* "was based on the general rule that evidence which is inherently impossible or in conflict with indisputable physical facts or laws of nature is not sufficient to take the case to the jury." No such situation arises from the evidence presented in this case. Each of the witnesses who identified the defendant as the man they saw with the victim shortly before her death had the opportunity to observe him for varying lengths of time in full daylight at reasonably close range. At trial, each witness positively identified the defendant as the man he or she had seen. As their testimony was not inherently incredible, the weight to be given it was for the jury to decide. *State v. Green*, 296 N.C. 183, 188, 250 S.E.2d 197, 201 (1978). The trial court did not err by submitting this case to the jury for its resolution of the question of the defendant's guilt of premeditated

and deliberate first-degree murder. This assignment of error is without merit.

[10] By another assignment of error, the defendant complains that he was denied an opportunity to rebut the State's evidence because the trial court denied him adequate access to a textile science expert. During the investigation of this case, the police located the van the defendant had owned at the time of the crime. Upon locating the van, the police took samples of fiber from its carpet in order to compare them to the fibers found on the victim. The police also collected hairs from the couch which had been in the defendant's home at the time of the crime in order to compare them to hairs found on the clothing of the victim at the time her body was discovered.

Prior to trial the defendant filed a motion for funds to hire an expert witness in hair and fiber analysis. After a hearing, the trial court granted this motion and authorized funds for this purpose. Approximately four months later, the defendant filed another motion seeking to have the trial court authorize the expenditure of up to $500 of public funds for the defendant to employ an expert witness in the field of textile science. After a hearing, the trial court granted the motion but authorized only $250 for such purpose. The defendant now argues that the trial court's rulings deprived him of proper assistance by a textile science expert sufficient to enable him to prepare his defense. We do not agree.

N.C.G.S. § 7A-450(b) allows the trial court to approve fees for the service of an expert witness to assist an indigent defendant. Before an indigent defendant is constitutionally entitled to the assistance of such an expert, however, he must make a preliminary showing of specific necessity or a particularized need for the assistance of the expert in the preparation of his defense. *State v. Bridges*, 325 N.C. 529, 531, 385 S.E.2d 337, 338 (1989). *See Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53 (1985). In order to establish a specific need for the assistance of an expert, the defendant must show that: (1) he will be deprived of a fair trial without the expert assistance, or (2) there is a reasonable likelihood that the expert assistance will materially assist him in the preparation of his case. *State v. Bridges*, 325 N.C. at 532, 385 S.E.2d at 338.

Although the defendant makes the broad statement that an expert in textile science could have materially assisted him in the preparation of his defense, he failed in the trial court and has

failed before this Court to point to any beneficial evidence that might have been obtained by such an expert. The only specific assertion made before this Court by the defendant in this regard is that: "A defense expert may well have testified that 90% of all vans and autos have factory installed carpets with fibers similar to those found on the victim." The defendant fails to suggest, however, why the $250 allowed by the trial court when it granted his motion for funds for an expert in textile science was not sufficient to allow him to discover any such evidence and introduce it through an expert. At the hearing on his motion, the defendant indicated through counsel to the trial court that $250 would be a sufficient amount for retaining an expert in textile science for the purposes for which he sought the assistance of such an expert. It is perhaps also significant to note that, although the defendant sought and was granted an order allowing funds for the assistance of an expert in hair and fiber analysis and an expert in textile science, he introduced no evidence through either such type of expert. We conclude, in any event, that the defendant has failed to make the requisite showing of specific need for any more funds for the assistance of an expert in textile science than were allowed by the trial court for this purpose. This assignment of error is without merit.

[11] In another assignment of error, the defendant contends that the trial court erred in admitting, without limiting instructions, evidence of statements made to two witnesses by the victim shortly before her death. The victim's mother testified that the victim told her by telephone on the day she disappeared that "a nice gray-haired man" was "going to take her fishing." A neighbor testified that on the day before the victim disappeared, the victim said that a nice man was going to take her fishing the next morning. The defendant asserts that the testimony concerning these statements by the victim constituted inadmissible hearsay. The trial court ruled that testimony as to these statements by the victim was admissible under Rule 804(b)(5). For the reasons stated in *State v. McElrath*, 322 N.C. 1, 366 S.E.2d 442 (1988), we conclude that the trial court correctly admitted testimony concerning the victim's statements, but based its ruling upon the wrong rule of evidence. Rule 803(3) of the North Carolina Rules of Evidence permits admission of a witness's testimony as to statements of intent by another person to prove subsequent conduct by that other person. *State v. McElrath*, 322 N.C. at 19, 366 S.E.2d at 452. The

testimony in question here fell squarely under Rule 803(3) and was admissible.

At trial, each witness testified that the victim said she planned to go fishing with "a nice gray-haired man." The victim's statements indicated a clear intent to do a future act. Therefore, testimony as to her statements was admissible under Rule 803(3) as evidence of her mental or emotional condition at the time she made the statements. *Id.*; N.C.G.S. § 8C-1, Rule 803(3) (1988).

The defendant complains that the jury was not instructed to limit its consideration of the evidence of the victim's statements. However, the defendant has suggested no limiting instruction which would have been either required or proper. Further, it does not appear from the record that the defendant requested any limiting instruction. The admission of evidence which is competent for a restricted purpose without limiting instructions will not be held to be error in the absence of a request by the defendant for such limiting instructions. *State v. Jones*, 322 N.C. 406, 414, 368 S.E.2d 844, 848 (1988). This assignment of error is without merit.

[12] In two additional assignments of error, the defendant argues that the trial court erred by excluding evidence tending to show that another person committed the crime charged, and that the trial court further erred by preventing his making a proper record of the excluded evidence for purposes of appellate review. We conclude, however, that the evidence in question was never actually offered at trial. Therefore, these issues are not properly before us for our review.

Prior to trial, the State made a motion *in limine* to exclude evidence of statements purportedly made by Joseph Franklin to authorities, which the defendant might seek to offer as evidence tending to show that Franklin committed the murder in question. At the defendant's request, the trial court deferred ruling on the State's motion. At some point, the defendant's counsel described the proposed Franklin evidence to the trial court during a recess. Apparently, the trial court advised counsel for the defendant that at that time the evidence was probably inadmissible and cautioned that any evidence the defendant was successful in introducing would, in effect, result in a waiver of his right to the final argument to the jury during closing arguments.

Near the conclusion of the State's evidence at trial, the State called Officer J. F. Styron of the Mecklenburg Police Department

STATE v. COFFEY

[326 N.C. 268 (1990)]

to testify about statements made to him by the witnesses who had identified the defendant. During the State's direct examination of Officer Styron, the trial court conducted a *voir dire* and ruled that most of Styron's proposed testimony was inadmissible hearsay.

During the *voir dire*, counsel for the defendant asked the trial court if he could ask Officer Styron questions concerning Joseph Franklin during his cross-examination. The trial court indicated that the defendant's counsel could do so, but that the trial court would sustain an objection to such questions at that time. The trial court also indicated that the defendant was free to call Officer Styron as his own witness later, if the defendant chose to present evidence, and could attempt to ask him the questions about Franklin at that time. The trial court again cautioned the defendant, however, that should he be successful in introducing evidence, he would lose the right to make the last argument to the jury during closing arguments. Counsel for the defendant stated: "Let me think about it while they [the jurors] are coming back in."

After the jury returned, the State announced that it had no further questions of Officer Styron. The trial court then gave the defendant the opportunity to cross-examine Officer Styron, but counsel for the defendant stated that he had no questions. The defendant made no effort during the remainder of the trial to call witnesses or to introduce evidence of Joseph Franklin's purported statements to the authorities. From the record before us, it appears that the defendant made a conscious election against introducing any evidence in order to retain his right to make the last closing argument before the jury. Therefore, we conclude that the defendant never properly sought to introduce any evidence tending to show that Joseph Franklin, and not the defendant, committed the crime charged. Our conclusion in this regard is reinforced by statements made at the conclusion of the guilt-innocence determination phase of the trial by counsel for the defendant and by the trial court.

After the jury retired to consider its verdict, the following colloquy between the defendant's counsel and the trial court took place:

> THE COURT: The defense counsel wants to read a statement into the record.

> MR. HINSON: This is a statement about the failure to present the "Franklin" evidence. I had subpoenaed Joseph Franklin,

STATE v. COFFEY

[326 N.C. 268 (1990)]

Jim Styron and Walter Dunn, Jim Styron formerly of the Mecklenburg County Police Department, and Walter Dunn of the City Police Department, upon learning that Joseph Franklin had been reported as the primary suspect in this case at some time in the past. I had spoken to Jim Styron, who informed me that he had before interviewed Joseph Franklin because he suspected Franklin had killed Amanda Ray. Franklin confessed to the murder of a sixteen-year-old girl in Caldwell County, for which he is now serving a life sentence. During interviews, Franklin was asked if he could have killed Amanda Ray and blocked out psychologically that he had committed the murder of Amanda Ray. According to Styron, Franklin said, yes, he could have. Styron took him to the lake, and he reportedly QUOTE turned white as a sheet. Based upon this interview, I applied for the services of a private investigator to try to prove that Franklin had access to transportation in 1979. The private investigator, after extensive efforts, was unable to show that Franklin had access to transportation in July of 1979. Franklin, I learned, is about six foot/one, weighs about a hundred sixty to a hundred seventy pounds, and has light brown hair. Franklin refused to talk without counsel present. I requested that he be delivered to this county for this trial, and this Court ordered Franklin brought here. I went to see Franklin this past Monday night. I confirmed through my own observations he is about six foot/one inches tall, a hundred sixty to a hundred seventy pounds, with light brown hair. In my opinion, there is some facial resemblance to the 1979 composite photo, which I have had in the form of a copy of a copy of a copy. I have not been able to compare him with the original composite. His face is long and thin. He has prominent ears. On Tuesday, with Franklin's counsel present, he agreed to talk to me. Franklin informed me that he had a mustache in 1979, which he has now. He did admit to wearing prescription glasses in '79 that darkened in sunlight. He also, I should add, said that his hair was shoulder length in 1979, and the mustache and the shoulder-length hair is inconsistent with the descriptions circulated in this case. He denied, however, committing the murder of Amanda Ray. He denied having a van or any other transportation, and, while he admitted the conversation with Styron, he said he did not kill Amanda Ray. He said that Styron badgered him and asked the question, "Could you have killed her and psychologically blocked it out?"

Franklin replied to Styron, "Yes, I could have, and so could you," directing that comment to Styron, but that he didn't kill Amanda Ray. He said he was taken to the lake by the officers and denies having any reaction or ever having seen the lake before. He says he is sure he did not kill Amanda Ray and would testify so if he were called as a witness in this case.

I have described these facts generally to the Court, it is my recollection, on Wednesday at the morning or lunch break, and I have also researched independently, with Mr. Carwile, the law of North Carolina on the defense of proving another committed the offense. The Court informed me it did not believe I had sufficient evidence to be permitted to present the defense, with the facts generally outlined. From my reading of the law, I believe the Court would most likely be upheld on appeal on this issue. Since attempting to present the evidence would cause us to lose the last argument, without either accomplishing anything with the jury or raising what I would deem to be a meaningful appeal issue, we elected not to present this evidence.

THE COURT: All right. Let the record reflect this. That the substance of what the defense counsel has placed in the record was related to me, and, upon the authority of State -v- Cotton, 318 N.C. 663, which held that evidence offered to show the guilt of one other than the accused is relevant and admissible if it points directly to the guilt of another party and does not merely create an inference or conjecture in this regard, and under Rule of Evidence 401, such evidence must tend both to implicate another and be inconsistent with the guilt of the defendant, on the basis of that case, I gave him the advice that, in my opinion, such evidence as he had in his possession would not be admissible in this trial. All right. Take Mr. Coffey back, Sheriff. We will await the verdict of the twelve. And that, if he attempted to introduce it, he would lose the last argument to the jury.

From the foregoing, it can be seen that the defendant never actually attempted to introduce any evidence tending to show that anyone other than the defendant committed the crime for which the defendant stood charged. Therefore, even if it is assumed arguendo that Styron's testimony would have resulted in such evidence,

the defendant may not now be heard to complain on appeal that such evidence was not before the jury or that the trial court did not allow him to cause the record to show what any such evidence might have been. During every criminal trial, a defendant must choose whether to present evidence or to argue last to the jury. General Rules of Practice for the Superior and District Courts, Rule 10 (1990) (adopted pursuant to N.C.G.S. § 7A-34 (1989)). In this case, the defendant faced this choice and elected not to present evidence and, thereby, retained the right to argue last. Assuming *arguendo* evidence tending to show that another person committed the crime existed, it was never formally offered by the defendant or excluded by the trial court. The defendant's assignments of error in this regard are without merit.

[13] By another assignment, the defendant argues that during the pretrial hearing on his motion to suppress testimony of witnesses identifying him as the man seen with the victim, the trial court improperly restrained the defendant from testing the recollection of witness Raymond Claiborne. The defendant's affidavit supporting his motion to suppress alleged that the pretrial identification procedures used by the police were unduly suggestive and that the witnesses' identifications of him were further tainted by their having seen photographs of the defendant published in a newspaper. The defendant attempted to ask Raymond Claiborne questions about the victim's clothing at the time he saw her with the defendant, but the trial court ruled that this line of inquiry was not relevant.

We note that the purpose of the suppression hearing was to test the witnesses' identifications of the defendant — not of the victim. N.C.G.S. § 15A-977(a) (1988). Furthermore, although cross-examination is a matter of right, the scope of cross-examination is subject to appropriate control in the sound discretion of the court. *State v. Hosey*, 318 N.C. 330, 334, 348 S.E.2d 805, 808 (1986); *see also* N.C.G.S. § 8C-1, Rule 611 (1988). Particularly in light of the allegations contained in the defendant's affidavit supporting his motion to suppress, we conclude that the scope of the defendant's cross-examination of Raymond Claiborne was appropriately limited by the trial court to issues concerning the reliability and admissibility of his identification of the defendant. This assignment of error is without merit.

[14] By another assignment, the defendant argues that the trial court improperly denied his request to continue the *voir dire* sup-

pression hearing until television tapes could be secured and presented to the court. The defendant contends that several witnesses had viewed television broadcasts showing the defendant before identifying him as the man they saw with the victim in this case. Therefore, the defendant argues that a review by the trial court of tapes of those broadcasts was necessary to the trial court's determination of the reliability of the witnesses' identifications of him. We do not agree.

The record reveals that during the suppression hearing, full inquiry was made as to the reliability of each witness's identification of the defendant. Evidence was received and considered concerning each witness with regard to "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson v. Brathwaite*, 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154 (1977). The trial court also heard testimony during the suppression hearing that certain of the witnesses had seen the television broadcasts showing the defendant before they identified him. Based upon this evidence, the trial court made findings and conclusions to the effect that each witness identified the defendant based upon his or her independent recollection of seeing him with the victim and was free from any possible taint from the television broadcasts.

Ordinarily, the decision whether to grant a continuance rests within the sound discretion of the trial court, and its ruling will not be reversed on appeal absent an abuse of discretion. *State v. Ford*, 314 N.C. 498, 502, 334 S.E.2d 765, 768 (1985). If the motion for a continuance is based on a constitutional right, however, the issue presented is not discretionary, but is a reviewable question of law. *Id.* Nevertheless, the denial of a motion to continue, regardless of its nature, will justify a new trial only upon a showing by the defendant that the denial was error and that his case was prejudiced as a result of that error. *Id.*

Here, we perceive neither error nor prejudice to the defendant resulting from the denial of his motion to continue the suppression hearing to obtain tapes of the television broadcasts in question. Unnecessarily suggestive circumstances alone do not require the exclusion of identification evidence. *State v. McCraw*, 300 N.C. 610, 268 S.E.2d 173 (1980). In the present case, each of the witnesses

STATE v. COFFEY

[326 N.C. 268 (1990)]

who had seen the broadcasts — which were not pretrial "identification procedures" — gave some description of what they had seen and said that the broadcasts had not influenced their identification of the defendant. Each testified that his or her identification was based solely upon an independent recollection arising from observing the defendant with the victim shortly before her death. Therefore, the trial court's findings of fact were supported by competent evidence introduced at the suppression hearing. The trial court's findings fully support its conclusions of law and its ultimate determination that the witnesses' identifications of the defendant were not the result of unduly suggestive identification procedures.

The defendant was free to have a subpoena issued for the production of the tapes of the broadcasts and to use them to attempt to attack the credibility of the witnesses at the trial of this case, but it does not appear that he did so. Further, the defendant does not indicate what purpose would have been served by having the tapes at the suppression hearing, other than reminding the trial court that certain identification witnesses had seen the broadcasts — a fact already before the court. The defendant has failed to state, and we do not detect, any reason why the denial of his motion to continue the pretrial suppression hearing in order to obtain tapes of the broadcasts was error or was prejudicial to him. This assignment of error is without merit.

By another assignment, the defendant argues that the trial court erred by sustaining an objection to the following questions he asked during his cross-examination of Pamela Dowd:

Question. And you were aware, weren't you, that the description of the van that was circulated was of a blue van?

Answer. I don't remember about the van.

Question. Well do you remember saying to any police officers back at that time that they had it wrong, that the color of the van was wrong?

State. Objection.

Court. Objection sustained.

Question. Did you say anything to anybody that you can recall about the color of the van back in 1979 or '80?

Answer. I can't recall.

The defendant contends that the trial court improperly limited his right to confront and cross-examine a witness against him. We disagree. As the record reflects, the defendant was allowed to rephrase his question and elicit the same information he had sought by the previous question to which the State's objection had been sustained. This assignment is without merit.

[15] By another assignment of error, the defendant argues that the trial court erred in allowing a State's witness to testify concerning prior statements taken from witnesses Raymond and Floyd Claiborne and Mabel Tanner concerning their observation of the victim and the defendant at the lake on the day the victim was killed. The defendant complains that the prior statements of the witnesses conflicted in many respects with their trial testimony and, for this reason, were not properly admitted as corroborative evidence.

A prior statement by a witness is corroborative if it tends to add weight or credibility to his or her trial testimony. *State v. Ramey*, 318 N.C. 457, 469, 349 S.E.2d 566, 573 (1986). In addition, new information contained in a witness's prior statement but not referred to in his or her trial testimony may be admitted as corroborative evidence if it tends to add weight or credibility to that testimony. *Id.* Here, the defendant has failed to specify which parts of the pretrial statements of the witnesses conflicted with their trial testimony. From the record before us we find no such conflicts. We conclude that the trial court properly admitted the prior statements of the witnesses as corroborative of their trial testimony, and this assignment of error is without merit.

By another assignment of error, the defendant argues that the trial court erred by failing to act *ex mero motu* to prevent improper arguments by the prosecutor during closing arguments to the jury. The defendant made no objection to the arguments at trial.

It is well settled that counsel are allowed wide latitude in their arguments to the jury. *State v. Johnson*, 298 N.C. 355, 368, 259 S.E.2d 752, 761 (1979). Counsel may argue all the facts and reasonable inferences arising from evidence properly admitted at trial. *State v. Maynard*, 311 N.C. 1, 14, 316 S.E.2d 197, 205, *cert. denied*, 469 U.S. 963, 83 L. Ed. 2d 299 (1984). However, counsel may not argue incompetent and prejudicial matters by injecting his own knowledge, beliefs, and personal opinions not supported

by the evidence. *State v. Johnson*, 298 N.C. at 368, 259 S.E.2d at 761. Where, as in this case, the defendant makes no objection to the argument of the prosecutor to the jury, appellate review is limited to a determination of whether the arguments by the prosecutor amounted to gross improprieties which make it plain that the trial court abused its discretion in failing to correct the prejudicial arguments *ex mero motu. State v. Holden*, 321 N.C. 125, 149, 362 S.E.2d 513, 529 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988).

[16] The defendant first argues that the prosecutor used evidence tending to show that the defendant masturbated in the presence of Angel Ashe to concoct a version of what occurred at the time of Amanda Ray's death which was not supported by evidence. We have reviewed the several inferences drawn by the prosecutor from the evidence concerning the incident with Angel Ashe and conclude that they were supported by the evidence. Even assuming *arguendo* that the inferences were not strictly supported by the evidence, however, the prosecutor's arguments in this regard were not so grossly improper as to require the trial court to correct them *ex mero motu.*

The defendant also complains of three other instances during which he contends the prosecutor stated facts or drew inferences not supported by the evidence. The defendant specifically contends that the prosecutor did so by his arguments to the jury that: (1) the defendant did not seek counseling after Janet Ashe confronted him about his having taken indecent liberties with her daughter; (2) only one witness viewed the defendant on television prior to identifying him (actually three witnesses did so); and (3) that a potential defense witness was not called because he could not refute the State's evidence. The defendant concedes that individually these alleged misstatements, unobjected to by him, did not warrant action by the trial court *ex mero motu.* However, the defendant argues that the cumulative effect of these misstatements required the trial court to intervene. We do not agree. Assuming *arguendo* that these statements by the prosecutor were not supported by the evidence or reasonable inferences drawn therefrom, they were not so grossly improper that the trial court abused its discretion by failing to intervene *ex mero motu.*

[17] The defendant next argues that the prosecution inflamed the jury by invoking God and providence. The prosecutor com-

mented that it was providential that the police were able to turn up some of the evidence which they collected. In this context, we conclude that the term "providence" was only used and understood as meaning fortuitous. Further, the prosecutor's remarks about God were not so grossly improper that the trial court abused its discretion by failing to intervene.

The defendant also complains that the prosecutor improperly argued that no witness had stated that the van previously owned by the defendant was not the van observed at the lake before the victim's death. The argument which the defendant now complains of was: .

> Now, the one thing that I want you to think about and remember in regard to these photographs and in regard to Mabel and her two sons is that nobody said this wasn't the van. [The prosecutor pointed to pictures of the defendant's van.] They said they weren't sure, those kinds of things, qualified statements. Nobody said this wasn't the van.

The record reflects that the three witnesses were not entirely clear about their identification of the van in the photograph, and one witness testified that at one point he had told police it was not the van he had seen at the lake. However, we cannot say that the prosecutor's argument was so grossly improper or clearly calculated to prejudice the jury as to require the trial court to intervene.

We conclude that the trial court's failure to intervene *ex mero motu* during the prosecutor's argument was not reversible error. This assignment of error is without merit.

The defendant also has brought forward several additional assignments and arguments concerning the guilt-innocence determination phase of his trial. His appellate counsel, who did not represent him at trial, has exhibited commendable candor and accuracy in noting that the issues he presents, some of which are scheduled for consideration in cases pending before the Supreme Court of the United States, have been or by logical extension of our prior cases would be resolved adversely to his position by this Court. Although we acknowledge that the defendant has preserved these issues for possible further review by the Supreme Court of the United States, we conclude that these assignments of error are without merit.

STATE v. COFFEY

[326 N.C. 268 (1990)]

**[18]** The jury having returned its verdict finding the defendant guilty of first-degree murder, the trial court conducted a separate sentencing proceeding as required by N.C.G.S. § 15A-2000. By an assignment of error, the defendant contends that the trial court provided the jury with a deficient written form, which was used by the jury for its written recommendation that the death penalty be imposed. The defendant argues that, as a result, the jury was erroneously permitted to recommend a sentence of death without returning a writing signed by the foreman on behalf of the jury showing *inter alia* that the mitigating circumstance or circumstances found by the jury were insufficient to outweigh the aggravating circumstance or circumstances found by the jury, as required under N.C.G.S. § 15A-2000(c)(3). We agree and, as a result, conclude that the sentence of death entered by the trial court must be vacated and we remand this case for a new sentencing proceeding.

At the conclusion of the sentencing proceeding, the trial court gave correct oral instructions to the jury concerning the order and form of the issues the jury must answer in determining whether to recommend a sentence of death or a sentence of life imprisonment. The trial court's oral instructions in this regard fully complied with our suggestions in *State v. McDougall*, 308 N.C. 1, 301 S.E.2d 308, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 173 (1983), concerning the proper form of the four questions to be submitted to the jury during capital sentencing and the order in which the jury should consider them. We find no fault in the trial court's oral instructions to the jury at the conclusion of the sentencing proceeding.

The writing signed by the foreman and returned by the jury, however, was insufficient to support a sentence, because at no point did it show, as required by statute: "[t]hat the mitigating circumstance or circumstances are insufficient to outweigh the aggravating circumstance or circumstances found." N.C.G.S. § 15A-2000(c)(3) (1988). Instead, the form given to the jury, in pertinent part, required the jury to answer the following questions:

(3) Do you unanimously find beyond a reasonable doubt that the aggravating circumstance or circumstances found by you are sufficiently substantial to call for the imposition of the death penalty?

(4) Do you unanimously find beyond a reasonable doubt that the aggravating circumstance or circumstances found by you

STATE v. COFFEY

[326 N.C. 268 (1990)]

is, or are, sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances found by you?

As is apparent, the fourth question on the form given the jury to use as its writing was largely repetitious of the third question and did not require the jury to specifically determine, as required by N.C.G.S. § 15A-2000(c)(3), whether the mitigating circumstances it had found were either insufficient or sufficient to outweigh the aggravating circumstances it had found.

The State argues that the trial court's oral instructions corrected the deficient form given to the jury which it returned as its writing. Since the jury was properly instructed, the State contends that the jury must have understood the order and form of the issues it was required to resolve in recommending death or life imprisonment. Even assuming the State is correct in its assertion, however, the verdict against the defendant still must be vacated and this case remanded for a new sentencing proceeding. Our legislature has directed that: "When the jury recommends a sentence of death, the foreman of the jury *shall sign a writing* on behalf of the jury which writing *shall show*: . . . (3) That the mitigating circumstance or circumstances are insufficient to outweigh the aggravating circumstance or circumstances found." N.C.G.S. § 15A-2000(c) (1988) (emphasis added). This requirement is mandatory, and a writing returned by the jury which fails to specifically show that the jury has determined that the mitigating circumstances are insufficient to outweigh the aggravating circumstances found will not support a sentencing recommendation or sentence in a capital case. Therefore, we vacate the sentence of death and remand this case to the Superior Court for a new sentencing proceeding pursuant to N.C.G.S. § 15A-2000.

No error in the trial.

Death sentence vacated and the case remanded for a new sentencing proceeding.