IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-793

No. COA22-52

Filed 6 December 2022

Vance County, Nos. 18CRS53195 18CRS53196 19CRS630

STATE OF NORTH CAROLINA

v.

JORGE MEDINA FABIAN

Appeal by defendant from judgments entered 24 June 2021 by Judge William D. Wolfe in Vance County Superior Court. Heard in the Court of Appeals 2 November 2022.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Sharon Patrick-Wilson, for the State.*
>
> *Kimberly P. Hoppin, for the defendant-appellant.*

TYSON, Judge.

¶ 1     Jorge Fabian ("Defendant") appeals the judgments entered on a jury's verdict for: Attempted First-Degree Sexual Offense with a Child under the age of 13, two counts of Statutory Rape of a Child, and Indecent Liberties with a Child. Our review shows no error.

## I.     Background

¶ 2          Defendant was indicted for: First Degree Rape of a Child and Statutory Sexual Offense with a Child (18 CRS 053195); Statutory Rape of a Child 15 Years or Younger and Indecent Liberties with a Child (18 CRS 053196); and Statutory Rape of a Child 15 Years or Younger (19 CRS 630) on 29 July 2019. The offense dates spanned from 1 August 2007 to 31 May 2012.

¶ 3          Defendant's convictions involve his inappropriate and indecent liberties, and his sexual conduct with his minor maternal cousin, S.F.C. (Pseudonym used to protect identity of minor, and her two sisters, K.C. and T.C., per N.C. R. App. P. 41(b)). S.F.C. was between twelve and fifteen years old during the times each of the sexual offenses and rapes occurred. S.F.C. has four siblings: one older sister, T.C.; one younger sister, K.C; a twin brother; and a younger brother. S.F.C. was twenty-five years old when she testified at trial.

¶ 4          S.F.C. did not report and kept Defendant's actions secret for several years until she broke down one day after breaking up with her boyfriend. At some point prior to 17 March 2018, S.F.C. had told her mother, brother, and twin brother that Defendant "molested" her and "touch[ed] [her] in inappropriate places." Defendant had lived in S.F.C.'s family home for a period of time. Defendant did not have anywhere else to stay, and he worked for S.F.C.'s father. S.F.C.'s parents treated Defendant like their "own child." They did not want to believe Defendant had molested and harmed their daughter.

¶ 5          Her parents individually called S.F.C.'s older sister, T.C., to inquire whether she was aware of any instances where Defendant had sexually assaulted S.F.C. Neither parent informed the other that they had reached out to T.C.  T.C. admitted Defendant had assaulted her on several occasions, including one time while Defendant sexually assaulted T.C., another cousin had inserted his finger inside S.F.C.'s vagina.

¶ 6          S.F.C.testified and described multiple occasions when Defendant had molested and raped her.  When S.F.C. was twelve years old and asleep, Defendant entered her bedroom.  She woke up because Defendant was rubbing her legs and genitalia. Defendant had inserted his hand inside her pajama pants; "as he was going up, he was going down in [her] private area," which she clarified during her testimony meant her vagina.

¶ 7          Defendant moved out of S.F.C.'s family home to another house in close proximity to S.F.C.'s school.  On several occasions, S.F.C. walked to Defendant's house and waited for her parents to pick her up after work.

¶ 8          On one occasion, S.F.C. tried to wait outside on Defendant's porch instead of entering his home because of his prior encounters with her.  S.F.C. reluctantly entered his home and watched television in the living room because Defendant had "insisted that [she] come in the house."

¶ 9        S.F.C. testified Defendant sat down beside her and "started touching [her]." He "started taking his clothes off, and then he started taking [her] clothes off." S.F.C. further testified Defendant's penis penetrated her vagina, and "he kept on and kept on" for 10 to 20 minutes. After the rape, Defendant forced her to take a shower, as he watched her wash herself.

¶ 10        S.F.C. explained Defendant had raped her in his living room many times before Defendant's wife moved into his house, so often that she could not "remember all [of] the times." She recalled three other specific times when Defendant had raped her. She remembered one occasion when Defendant stopped listening to his music and raped her in his bedroom. On another occasion, Defendant picked her up after a swim meet and again raped her in his bedroom. Defendant also raped her one evening after he was married and while his wife was home. S.F.C. hesitated to scream for help during the assault because she was afraid his wife might think she had initiated it.

¶ 11        On 17 March 2018, S.F.C. attended a family cookout at her aunt's house. At the cookout, S.F.C.'s father and brother confronted Defendant. S.F.C.'s father had hoped Defendant would deny the rape allegations, but he did not. According to S.F.C., Defendant explained "he didn't know why he did the things he did to [S.F.C.], but [admitted] he did it." S.F.C. and her brother reported the incident to the police the following day.

¶ 12          Nearly two years after the indictments were issued, a jury convicted Defendant of: Attempted First-Degree Sexual Offense with a Child under the age of 13 (18 CRS 053195), Statutory Rape Against Victim of 13 or 14 Years Old and Indecent Liberties with a Child (18 CRS 53196); and Statutory Rape Against Victim of 15 Years Old (19 CRS 630) on 24 June 2021.

¶ 13          The trial court sentenced Defendant as a prior record level I offender in the presumptive range of 157 to 198 months on the Attempted First-Degree Sexual Offense with a Child under the age of 13. The remaining offenses were consolidated, and he was sentenced to a consecutive term in the presumptive range of 192 to 240 months in prison for two counts of Statutory Rape of a Child 15 Years or Younger and one count of Taking Indecent Liberties with a Child. Defendant filed timely notice of appeal.

## II.     Jurisdiction

¶ 14          Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b)(4), 15A-1444 (2021).

## III.     Issues

¶ 15          Defendant presents several issues on appeal. Defendant argues the trial court erred by denying his motion to dismiss the charge of attempted statutory sexual offense due to insufficient evidence. He also argues the trial court erred by allowing certain witnesses to testify Defendant had committed sexual offenses against S.F.C's

older sister, T.C. He asserts two reasons in support: (1) the allegations were impermissible character evidence under Rule 404(b) "in a case where conviction or acquittal turned almost exclusively on the jury's assessments of S.F.C.'s credibility, and most probably had an impact on the jury's verdicts"; and (2) S.F.C.'s parents' testimony regarding T.C.'s accusation, essentially stating Defendant had committed similar sexual offenses against her, caused them to believed S.F.C improperly vouched for the credibility of S.F.C.

¶ 16        Defendant also asserts his counsel's failure to object to those statements constituted ineffective assistance of counsel. Defendant further argues certain statements made by the prosecutor during closing argument unfairly prejudiced him by impermissibly commenting on his constitutional right to not testify. We address each issue in turn.

### IV.    Denial of Defendant's Motion to Dismiss

¶ 17        Defendant argues the trial court erred by denying his motion to dismiss the charge of attempted statutory sexual offense due to insufficient evidence.

### A. Standard of Review

¶ 18        Our Supreme Court stated: "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly

denied." *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992) (quotation

marks omitted) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)).

> The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion.

*Powell*, 299 N.C. at 99, 261 S.E.2d at 117 (citing *State v. Thomas*, 296 N.C. 236, 250

S.E.2d 204 (1978); *State v. McKinney*, 288 N.C. 113, 215 S.E.2d 578 (1975)).

¶ 19        "This Court reviews [a] trial court's denial of a motion to dismiss *de novo*."

*State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted).

## B. Analysis

¶ 20        A defendant is guilty of a first-degree statutory sexual offense if they are "at

least 12 years old," and "engage[ ] in a sexual act with a victim[,] who is a child under

the age of 13 years" and the defendant is "at least four years older than the victim."

N.C. Gen. Stat. § 14-27.29 (2021).  A sexual act includes "any penetration, however

slight, by an object into the genital opening of a person's body."  *See* N.C. Pattern Jury

Instructions, 207.45A.1A.

¶ 21        "In order to prove an attempt of any crime, the State must show: (1) the intent

to commit the substantive offense, and (2) an overt act done for that purpose which

goes beyond mere preparation, but (3) falls short of the completed offense." *State v. Sines*, 158 N.C. App. 79, 85, 579 S.E.2d 895, 899 (2003) (citation and quotation marks omitted); *see also* N.C. Gen. Stat. § 15-170 (2021) (noting a defendant indicted on a crime may be convicted "of a less degree of the same crime, or of an *attempt to commit the crime so charged*, or of an attempt to commit a less degree of the same crime" (emphasis supplied)).

¶ 22        The jury was instructed they could convict Defendant only upon a finding that he had engaged in "conduct [which] came so close to bringing about that sexual act that in the ordinary course of events the defendant would have completed the act with the alleged victim had the defendant not been stopped or prevented." *See* N.C. Pattern Jury Instructions, 207.45A.1A.

¶ 23        S.F.C. testified she was twelve years old when Defendant first engaged in sexual conduct with her. Defendant is at least twelve years older than S.F.C., which meets the age disparity requirements of being at least "four years older than the victim" in N.C. Gen. Stat. § 14-27.29. S.F.C. also testified Defendant entered her room while she was sleeping, placed his hands inside her pajama bottoms, and rubbed his hand against her vagina. She explained her mother was making breakfast in the kitchen because she could smell the meal cooking, and her father was getting ready for work by cranking up all of the trucks.

¶ 24    This evidence, viewed in the light most favorable to the State, supports the trial court's decision to deny Defendant's motion to dismiss. The State's evidence could support a jury finding Defendant would have committed a sexual offense against S.F.C. if he was not stopped or prevented by the presence and activities of her parents. This inference is further supported by other evidence Defendant had raped her when her parents or others were not around. The trial court did not err by denying Defendant's motion to dismiss.

## V.    Testimony Regarding the Alleged Sexual Offenses Against T.C.

¶ 25    Defendant argues the trial court erred by allowing certain witnesses to testify Defendant had also committed sexual offenses against S.F.C's older sister, T.C.

## A. Standard of Review

¶ 26    In a criminal case, "an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be [ ] the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(a)(4); *State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012) (citations omitted) ("Unpreserved error in criminal cases, on the other hand, is reviewed only for plain error."). "[P]lain error review in North Carolina is normally limited to instructional and evidentiary error." *Lawrence*, 365 N.C. at 516, 723 S.E.2d at 333 (citation omitted); *State v. Patterson*, 269 N.C. App. 640, 645, 839 S.E.2d 68,

72, *review denied*, 847 S.E.2d 886 (2020) (citing *State v. Maddux*, 371 N.C. 558, 564, 819 S.E.2d 367, 371 (2018); then quoting *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334) ("[P]lain error is to be 'applied cautiously and only in the exceptional case.'").

¶ 27 "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *Id.* at 518, 723 S.E.2d at 334 (affirming how to apply the plain error standard of review, as set forth in *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). In deciding whether an unpreserved evidentiary error rises to plain error, this Court "must examine the entire record and determine if the [ ] error had a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. at 661, 300 S.E.2d at 378-79 (citation omitted); *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993) (citation omitted) (explaining a defendant must convince this Court on appeal "not only that there was error, but that absent the error, the jury probably would have reached a different result").

## B. Analysis

¶ 28 Defendant objected to certain statements indicating he had committed prior similar sexual offenses against S.F.C's younger sister, K.C., under North Carolina Rules of Evidence 404(b). The trial court held the evidence was admissible to show Defendant's motive, opportunity, and intent.

¶ 29 The evidence tended to show Defendant's motive because "both girls were between 12 and 15 years of age when the acts occurred, had a familial relationship

with Defendant, and were targeted by Defendant when their parents or other adults were not in the room." This evidence also tended to show opportunity because "Defendant took advantage of situations which made it less likely for him to be detected[,] and less likely that if either girl informed on him, that they would be believed."

¶ 30   The prior bad acts were "sufficiently similar" and in "temporal proximity" to the current offense because: both sisters were around the same ages when the offenses occurred, both had a familial relationship with Defendant, Defendant never spoke to either of the sisters when committing the offenses, and both girls were approached and initially victimized when asleep.

¶ 31   Defendant failed to object under Rule 404(b) to testimony indicating Defendant allegedly committed sexual offenses against S.F.C.'s *older* sister, T.C. Defendant argues the trial court committed plain error by allowing the statements about T.C. for two reasons: (1) the allegations about T.C. were "unsubstantiated and unfairly prejudicial, in a case where conviction or acquittal turned almost exclusively on the jury's assessments of S.F.C.'s credibility, and most probably had an impact on the jury's verdicts"; and (2) S.F.C.'s parents' testimony, indicating they believed S.F.C. after learning Defendant had allegedly committed similar sexual offenses against T.C., improperly vouched for the credibility of S.F.C. We address each of Defendant's arguments in turn.

### 1. *Rule 404(b) – "Prior Bad Acts"*

¶ 32     North Carolina Rule of Evidence 404(b) provides:

> (b) Other crimes, wrongs, or acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment[,] or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2021).

¶ 33     Our courts have characterized Rule 404(b) as a "general rule of *inclusion* of relevant evidence of other crimes, wrongs[,] or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Carpenter*, 361 N.C. 382, 386, 646 S.E.2d 105, 109 (2007) (citing *State v. Coffey*, 326 N.C. 268, 278–79, 389 S.E.2d 48, 54 (1990)).

¶ 34     Prior to our General Assembly's adoption of the North Carolina Rules of Evidence, the general rule was that "evidence of the commission of other independent offenses by an accused is not admissible as proof of guilt for the offense for which the accused is on trial." *State v. Sturgis*, 74 N.C. App. 188, 191, 328 S.E.2d 456, 458 (1985) (citing *State v. McClain*, 240 N.C. 171, 173, 81 S.E.2d 364, 365 (1954) (citations omitted) (explaining the "State cannot offer evidence tending to show that the accused

has committed another distinct, independent, or separate offense" even if "the other offense is of the same nature as the crime charged")).

¶ 35     While North Carolina's appellate courts had relied heavily on *McLain* prior to the adoption of the North Carolina Rules of Evidence, our Supreme Court clarified Rule 404(b) does not function as a "general rule of exclusion" and that "a careful reading of Rule 404(b) clearly shows, evidence of other offenses is *admissible* so long as it is *relevant to any fact or issue other than* the character of the accused." *Coffey*, 326 N.C. at 278, 389 S.E.2d at 54 (1990) (citation and quotation marks omitted).

¶ 36     Evidence admitted under Rule 404(b) nevertheless "should be carefully scrutinized in order to adequately safeguard against the improper introduction of character evidence against the accused." *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 122 (2002) (citations omitted); *see also* N.C. Gen. Stat. § 8C-1, Rule 403 (2021).

> To effectuate these important evidentiary safeguards, the rule of inclusion described in *Coffey* is constrained by the requirements of *similarity and temporal proximity*. Evidence of a prior bad act generally is admissible under Rule 404(b) if it constitutes substantial evidence tending to support a reasonable finding by the jury that the defendant committed the *similar* act.

*Al-Bayyinah*, 356 N.C. at 155-56, 567 S.E.2d at 123 (citations and quotation marks omitted) (emphasis supplied); *see also State v. Sturgis,* 74 N.C. App. 188, 191-92, 328 S.E.2d 456, 458 (1985) (citing *State v. Greene*, 294 N.C. 418, 241 S.E.2d 662 (1978);

then citing *State v. Fowler*, 230 N.C. 470, 53 S.E.2d 853 (1949)) (noting that evidence of prior bad acts may be admitted into evidence if those acts establish a defendant's motive, opportunity, or intent to commit the offense charged).

¶ 37        Additionally, "[i]n construing the exceptions to the general rule, our courts have been liberal in admitting evidence of similar sex crimes." *See Sturgis,* 74 N.C. App. at 191-92, 328 S.E.2d at 458 (citations omitted) (explaining that in *State v. Patterson*, 66 N.C. App. 657, 311 S.E.2d 683 (1984), evidence that a defendant "charged with committing a sexual offense . . . had committed numerous similar acts upon the [victim] over a four to five year period, was held competent to show defendant's 'motive and intent,'" and in *State v. Turgeon*, 44 N.C. App. 547, 261 S.E.2d 501 (1980), where "defendant was convicted of assault with intent to commit rape upon a young girl, evidence that the defendant had committed sexual acts upon the sister of the prosecutrix over a two year period preceding the act with which defendant was charged, was held admissible").

¶ 38        This Court has previously held testimony that a defendant who has "engaged in similar sexual conduct" with a victim's sibling is admissible and competent to show the "defendant's intent, motive and on-going plan to gratify his sexual desires." *Sturgis*, 74 N.C. App. at 193, 328 S.E.2d at 459.  In *Sturgis*, the defendant "had committed acts similar to the offense charged in this case" when the victim and "her sisters had been entrusted to the care of defendant." *Id.* at 191, 328 S.E.2d at 458.

The victim's sister "testified that on one occasion, after the offense with which defendant is charged, defendant felt her privates and removed her clothing[,]" and both sisters "testified that defendant instructed them not to tell their mother what he had done." *Id.*

¶ 39 Defendant failed to object under Rules 404(b) or Rule 403 to the testimony indicating he committed a sexual offense against T.C. at trial, despite vigorously objecting to similar statements about alleged sexual offenses against S.F.C's younger sister, K.C.

¶ 40 Here, the facts resemble those in *Sturgis*. The State's evidence tended to show Defendant had committed similar sexual offenses against the victim's older sister, T.C., and evidence presented tended to show the sexual offenses against T.C. occurred in the presence of S.F.C. Other testimony and evidence also indicated Defendant committed sexual offenses against both S.F.C.'s older and younger sisters, collectively demonstrating how Defendant had taken advantage of his position of trust by the parents and access to the girls in their home and his "intent, motive and on-going plan to gratify his sexual desires." *Id.* at 193, 328 S.E.2d at 459. "The plain error rule applies only in truly exceptional cases." *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986). Defendant has failed to demonstrate Rule 404(b) error, much less plain error. Defendant's argument is overruled.

### 2. *Improper Vouching*

¶ 41 Rule 701 of the North Carolina Rules of Evidence provides a lay witness may testify "to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2021).

¶ 42 "[O]ur Supreme Court has determined that when one witness vouch[es] for the veracity of another witness, such testimony is an opinion which is not helpful to the jury's determination of a fact in issue and is therefore excluded." *State v. Gobal*, 186 N.C. App. 308, 318, 651 S.E.2d 279, 286 (2007), *aff'd*, 362 N.C. 342, 661 S.E.2d 732 (2008) (citation omitted). "[I]t is typically improper for a party to 'seek to have the witnesses vouch for the veracity of another witness.'" *State v. Warden*, 376 N.C. 503, 507, 852 S.E.2d 184, 188 (2020) (original alterations omitted) (citing *State v. Robinson*, 355 N.C. 320, 334, 561 S.E.2d 245, 255 (2002).

¶ 43 This Court outlined the steps for determining whether one witness vouches for the credibility of another in *Gobal*: (1) examine whether the witness was testifying as a lay witness or as an expert, as Rule 701 only bars certain opinion testimony from lay witnesses, (2) "determine if the testimony of the witness is opinion, as opposed to fact," (3) decide if the testimony falls within the exception in Rule 701 by helping the jury determine "a fact in issue." *Gobal*, 186 N.C. App. at 317-19, 651 S.E.2d at 285-87. If Defendant failed to preserve the issue for appeal by not objecting at trial, this Court must then determine whether the admission of testimony vouching for the

credibility of a witness constituted plain error, i.e., "whether it was probable, absent th[e] error, that the jury would have reached a different verdict than the one it actually reached." *Id.* at 319, 651 S.E.2d at 287 (citing *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 379 (1983)).

¶ 44     Here, Defendant objects to following testimony of S.F.C.'s mother:

> [The State]: And after [S.F.C.] told y'all about those things that had happened to her, what did y'all do next?
>
> [S.F.C.'s Mother]: We didn't – we – we asked her, "Are you telling us the truth?" And she said, "Yeah." And I said, "Okay." And my husband went and called my stepdaughter [T.C.] and asked her –
>
> [The State]: So – so don't – don't tell me – don't tell me about [T.C.].
>
> [S.F.C.'s Mother]: Okay.
>
> . . .
>
> [The State]: And after [S.F.C.'s Father] talked to [T.C.], what happened next?
>
> [S.F.C.'s Mother]: That we – we found out that she was telling us the truth, that she got touched by [Defendant] and – by [S.F.C.'s other male cousin] and [Defendant]; they had did what they did to her.
>
> [The State]: [Mother], when [S.F.C.] first told you, why did you ask her if she was telling you the truth?
>
> [S.F.C.'s Mother]: Because I saw – I saw him like my own – my own child, and I couldn't believe it. I was like, but it's like your brother. And I never expect that he would have

did my children like that.

¶ 45    Defendant also objects to the following testimony of S.F.C.'s father:

> [The State]: – without saying what she said, what did you talk to [T.C.] about?
>
> [S.F.C.'s Father]: I asked her had she ever been messed with at anytime in my house with my daughter [S.F.C.].
>
> [The State]: Okay. Now, did she give you an answer?
>
> [S.F.C.'s Father]: Yes.
>
> [The State]: Why did you call [T.C.] and ask her that question?
>
> [S.F.C.'s Father]: The reason was because I wanted to know if it was true. I just didn't jump off what [S.F.C.] told me and what she said on the way home. I wanted to know exact[ly] from the other person she said she was with to make sure the stories lined up for myself. And I didn't even tell my wife at that time that I had talked to [T.C.].

¶ 46    Both of S.F.C.'s parents were admitted and testified as lay witnesses. Both testified about their opinion, as opposed to a fact, because the statements were not "*instantaneous* conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation." *Gobal*, 186 N.C. App. at 317-18, 651 S.E.2d at 285-86 (emphasis supplied) (citations and quotation marks omitted) (explaining instant opinions such as, "defendant appeared calm" is admissible, but statements like, "because McCloskey became less nervous he must have been telling the truth," are inadmissible under Rule 701).

¶ 47        Defendant argues their testimony was also unnecessary to determine a fact in issue because S.F.C. had testified at trial, and the jury could determine for itself whether they believed S.F.C.  *Id.* App. at 318-19, 651 S.E.2d at 286 ("[T]he jury was able to see for itself the manner and appearance of McCloskey when he testified, and determine for itself if it wanted to believe him.  Therefore, the opinion as to his credibility was not helpful to the jury's determination of a fact in issue.").

¶ 48        This Court must analyze whether the admission of such opinion testimony constitutes plain error because Defendant failed to object at trial.  *Id.* at 319, 651 S.E.2d at 287.  Although this case depended on whether the jury believed S.F.C. or Defendant, like in *Gobal*, Defendant's truthfulness and guilt was impeached in other ways: through the text messages Defendant sent to S.F.C.'s mother saying he knew what he had done was "something very, very serious that should never have happened," and Defendant's silence when S.F.C.'s father and her brother had confronted him about S.F.C.'s and her sisters' accusations at the family cookout.  *Id.* The jury also may have relied on the evidence regarding Defendant's prior sexual offenses against S.F.C.'s younger sister, K.C., to establish Defendant's motive, opportunity, and intent to commit similar offenses against S.F.C.

¶ 49        Ample evidence in the record existed to support the jury concluding they believed S.F.C.'s credibility over Defendant.  Defendant has failed to demonstrate "it was probable, absent th[e] error, that the jury would have reached a different verdict

than the one it actually reached. *Id.* Defendant has failed to demonstrate plain error. His arguments are without merit.

## VI.    Ineffective Assistance of Counsel

¶ 50    "Ordinarily, to prevail on an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's performance was deficient' and (2) 'the deficient performance prejudiced the defense.' *State v. Phillips*, 365 N.C. 103, 118, 711 S.E.2d 122, 135 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)); *accord State v. Braswell*, 312 N.C. 553, 562–63, 324 S.E.2d 241, 248 (1985).

¶ 51    "When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *State v. Fletcher*, 354 N.C. 455, 481, 555 S.E.2d 534, 550 (2001) (citing *Strickland*, 466 U.S. at 687–88, 80 L.Ed.2d at 693). Deficient performance encompasses only those "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Prejudice may be found when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

¶ 52    Defendant argues his counsel's failure to object to the statements about sexual offenses committed against T.C. under Rule 404(b): (1) "was objectively unreasonable" because the claims were "unsubstantiated and unfairly prejudicial"

and, (2) there is a reasonable probability the result would have been different if counsel objected because "there was no physical evidence of abuse," as the "allegations were made [ ] years after they were alleged to have occurred", and (3) "conviction or acquittal turned almost exclusively on the jury's assessment of S.F.C.'s credibility."

¶ 53    The trial court's order denying Defendant's Motion for Appropriate Relief explained his counsel: "effectively argued the absence of certain law enforcement witnesses," "presented inconsistencies in witness statements to the jury during cross examination," and "presented a vigorous defense; thoroughly testing the State's case through cross examination and the argument of motions to limit the state's presentation and presenting witnesses on Defendant's behalf."

¶ 54    Defendant's counsel's conduct and representation prior to and at trial did not fall below the threshold outlined in *Phillips, Fletcher, and Strickland*.  Presuming counsel had objected to the statements about prior sexual assaults against T.C., the testimony would have likely been admitted under Rules 404(b) and 403.  Defendant fails to show prejudice by his counsel's failure to object.

## VII.    Prosecutor's Statements During Closing Argument

¶ 55    "It is [ ] well settled that when a defendant exercises his right to silence, it shall not create any presumption against him, and any comment by counsel on a defendant's failure to testify is improper and is violative of his Fifth Amendment

right." *State v. Ward*, 354 N.C. 231, 250-51, 555 S.E.2d 251, 264 (2001) (citations and quotation marks omitted).

¶ 56        Prosecutors are prohibited from commenting on a defendant's failure to testify, *State v. Williams*, 341 N.C. 1, 13, 459 S.E.2d 208, 216 (1995), but they "may properly bring to the jury's attention the failure of a defendant to produce exculpatory evidence or to contradict evidence presented by the State." *State v. Parker*, 350 N.C. 411, 431, 516 S.E.2d 106, 120 (1999) (citing *State v. Mason*, 317 N.C. 283, 287, 345 S.E.2d 195, 197 (1986)).

¶ 57        "A prosecutor's challenged remarks must be reviewed in the overall context in which they were made and in view of the overall factual circumstances to which they referred." *State v. Penland*, 343 N.C. 634, 662, 472 S.E.2d 734, 750 (1996).

¶ 58        Here, the prosecutor made the following statement during closing argument:

> Do you remember that [S.F.C.'s father] said when he was
> testifying about what happened after the cookout and they
> were standing outside, and he said, "I was waiting for him
> to deny it"?  He's still waiting.
>
> When you read this text, as you read the text, are you – are
> you waiting for him to deny it?

¶ 59        The prosecutor then read the text Defendant had sent to S.F.C.'s mother after S.F.C.'s parents had confronted him;

> I know it is something very – very serious that should never
> have happened.  But before you take matters into your
> hands, I ask you, for the sake of my girls who will be left

> without me. I beg you to give me the chance, the opportunity, to watch them grow. I know it is something very serious that should never have happened.

¶ 60 The prosecutor's comments, when "viewed in the context in which they were made and in light of the overall factual circumstances to which they referred," indicate the prosecutor was not attempting to comment on the Defendant's Fifth Amendment right of silence. *Ward*, 354 N.C. at 250, 555 S.E.2d at 264 (citation and quotation marks omitted). In a case which centered around the credibility of the victim versus Defendant, the prosecutor was instead highlighting the fact that Defendant never denied S.F.C.'s allegations when confronted by her parents. Further, the texts Defendant had sent begging for mercy and admitting it "should never have happened," were properly admitted into evidence.

¶ 61 The prosecutor's argument is best described as a "comment on the strength of the State's evidence and the absence of any contradictory evidence." *Parker*, 350 N.C. at 431, 516 S.E.2d at 120. The trial court also administered the pattern jury instructions regarding Defendant's failure to testify, which instructed the jurors that Defendant's "decision not to testify create[d] no presumption against" him and his "silence . . . [wa]s not to influence [their] decision in any way." The jury is presumed to have followed the trial court's instructions. *State v. Steen*, 352 N.C. 227, 249, 536 S.E.2d 1, 14 (2000) (citation omitted) (explaining our state's appellate courts

"presume[ ] that jurors follow the trial court's instructions"). Defendant has failed to demonstrate error or prejudice.

## VIII. Conclusion

The trial court did not err by denying Defendant's motion to dismiss for insufficiency of the evidence. The State's evidence could support a jury finding Defendant would have committed a sexual offense against S.F.C. if he was not stopped or prevented by the presence of her parents.

The trial court did not commit plain error by allowing the statements indicating Defendant committed prior sexual offenses against S.F.C.'s older sister, T.C. If Defendant had objected under Rule 404(b), the trial could have properly admitted those statements for the purpose of establishing Defendant's "intent, motive and on-going plan to gratify his sexual desires," just like the trial court admitted similar evidence of Defendant's actions towards S.F.C.'s younger sister. *Sturgis*, 74 N.C. App. at 193, 328 S.E.2d at 459. Any testimony purportedly vouching for the credibility of S.F.C. did not prejudice Defendant because ample evidence in the record existed to support a jury deciding they believed S.F.C. over Defendant. Defendant has failed to show plain error.

Defendant was not prejudiced by his counsel's failure to object to the admission of the statements regarding his alleged prior sexual offenses against T.C. Even if

counsel had objected to the statements, the testimony would have likely been admitted under Rules 404(b) and 403.

¶ 65        Defendant has not demonstrated prejudice by the prosecutor's statements during closing argument. The prosecutor was "comment[ing] on the strength of the State's evidence and the absence of any contradictory evidence," *Parker*, 350 N.C. at 431, 516 S.E.2d at 120, and the jury was instructed not to consider Defendant's decision to refrain from testifying.

¶ 66        Defendant received a fair trial, free from prejudicial errors he preserved and argued on appeal. We find no error in the jury's verdicts or in the judgments entered thereon. *It is so ordered.*

NO ERROR.

Judge WOOD concurs.

Judge MURPHY concurs in sections I-VI and concurs in result only as to section VII.