STATE OF NORTH CAROLINA v. VIRGIL GLENN LATHAM

No. COA02-595

(Filed 6 May 2003)

### 1. Evidence— prior assaults—domestic partner—relevant

Evidence of prior assaults by the accused against a murder victim are both relevant and admissible when the victim is a domestic partner. Moreover, the defendant in this case did not object at trial, and any possible prejudice was outweighed by the probative value in determining whether the shooting was an accident.

### 2. Evidence— hearsay—murder victim's fear of defendant—state of mind exception

Statements made by a murder victim to several witnesses concerning her fear of defendant were admissible under the state of mind exception of the hearsay rule to show that the shooting of the victim was not accidental. N.C.G.S. § 8C-1, Rule 803(3).

### 3. Appeal and Error— preservation of issues—brief—case law not cited—argument not considered

An argument that the admission of hearsay violated a first-degree murder defendant's right to confront his accuser was not addressed because defendant cited no supporting case law.

### 4. Evidence— defendant's remorse—admissible

The exclusion of lay testimony that a first-degree murder defendant might feel remorse for killing the victim was not error, much less plain error. The witness did not recount a statement, but gave an opinion which was not based on first-hand observation. Also, it is not clear how the opinion was relevant to any facts at issue in the case.

STATE v. LATHAM

[157 N.C. App. 480 (2003)]

## 5. Homicide— first-degree murder—short-form indictment

Use of a short-form murder indictment was not error.

Appeal by defendant from judgment entered 28 September 2001 by Judge Cy A. Grant in Pitt County Superior Court. Heard in the Court of Appeals 18 February 2003.

> *Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Gary R. Govert, for the State.*

> *Osborn & Tyndall, P.L.L.C., by Amos Granger Tyndall, for defendant-appellant.*

HUNTER, Judge.

Virgil Glenn Latham ("defendant") appeals from a first degree murder conviction, whereby he was sentenced to life imprisonment without the possibility of parole. For the reasons stated herein, we find no error.

The State's evidence at trial tended to show that decedent, Wylene Little ("Wylene"), was killed as the result of a gunshot wound to the head, and that the gun was fired by defendant. The shooting occurred on the day that Wylene asked defendant to move out. At trial, defendant claimed the shooting was the result of an accident. Defendant alleged that he took his gun from the trunk of his car and put it in his waistband as he gathered his belongings. He further claimed that Wylene threw some clothes at him at the same moment he was trying to prevent the gun from slipping, which resulted in the gun going off. The gun was fired twice, and Wylene was struck by a bullet in the back of her head. Several eyewitnesses testified that they did not see Wylene throw anything at defendant immediately prior to the shots being fired. At least four witnesses testified that they heard defendant curse at the victim immediately prior to the shooting. One eyewitness, Tristan Little ("Tristan"), Wylene's nephew, testified that he heard Wylene ask defendant to leave; he watched defendant pack his things into garbage bags; and when Tristan tried to hand defendant some hair clippers, defendant "walked right by" him and said to Wylene, "are you going to kick me out, bitch?" Tristan then testified that after defendant said this, he watched defendant shoot Wylene. Furthermore, two eyewitnesses testified to hearing defendant, also immediately prior to the shooting, say something to the effect that if he had to leave, Wylene would be leaving too.

Testimony was admitted by the trial court indicating that defendant had assaulted Wylene on at least two occasions prior to the shooting. For example, Erica Little ("Erica"), Wylene's daughter, was permitted to testify that on one occasion, Wylene came home with a swollen lip and bloody shirt after going out with defendant. Defendant told Erica that Wylene had hit her lip on the door. Additionally, evidence was admitted that defendant pled guilty to assault inflicting serious injury in connection with an incident where defendant hit Wylene with a mirror, resulting in a serious injury to her leg. Eyewitnesses to this assault were permitted to testify at trial about the incident. In contrast, defendant attempted to elicit testimony from Teresa Brown ("Brown") as to her opinion whether defendant was the type of person who would feel remorse for shooting and killing Wylene. The trial court sustained the State's objection to this solicitation, and later allowed defendant to pursue the inquiry with Brown on a *voir dire* cross-examination, out of the presence of the jury, where she stated: "I think if he could take it back, he would."

Further, several witnesses were permitted to testify at trial that Wylene had expressed fear of defendant prior to the shooting. Tristan testified that on the day of the shooting, Wylene asked him to stay with her because she was scared that defendant might "try something" when she asked him to move out. Deirde Little, Tristan's mother, testified that her son called her that evening and asked her to come over to the victim's house "because Wylene was afraid that [defendant] was going to start something." Additionally, Erica, the victim's daughter, testified that when she asked her mother why she was kicking defendant out, Wylene's reply was that "he had a little attitude, and she knew he was going to start some trouble."

Defendant was indicted for murder through the use of a short form indictment on 1 November 1999. Thereafter, on 28 September 2001, a jury unanimously convicted him of first degree murder. Defendant was subsequently sentenced to life imprisonment without the possibility of parole. Defendant appeals.

I.

[1] Defendant first argues that the trial court erred in admitting evidence of his prior assaults against the victim. Specifically, the trial court admitted testimony by several witnesses regarding two assaults that defendant perpetrated against Wylene prior to the shooting. Defendant did not object at trial to the majority of the testimony

regarding the prior assaults, thus we must use the plain error rule in considering defendant's arguments in this respect.

The "plain error" rule is well settled in this State and has been set forth as follows:

"[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *'fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial[.]' "

*State v. Black*, 308 N.C. 736, 740, 303 S.E.2d 804, 806 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)).

Defendant argues that evidence of his prior assaults against the victim should have been inadmissable because of its lack of relevance, its overly prejudicial effect, because the acts were not similar to the crime charged, and because the acts were introduced to show defendant's propensity for violence. Defendant cites to N.C. Rules of Evidence 401, 403, and 404(b) in support of these arguments. Under Rule 401, evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401. Contrary to defendant's claim, evidence of defendant's relationship with the victim is directly relevant to the issue of whether the shooting was in fact an accident, as discussed in the Rule 404(b) analysis that follows.

"Evidence of a prior bad act generally is admissible under Rule 404(b) if it constitutes 'substantial evidence tending to support a reasonable finding by the jury that the defendant committed the *similar* act.' " *State v. Al-Bayyinah*, 356 N.C. 150, 155, 567 S.E.2d 120, 123 (2002) (quoting *State v. Stager*, 329 N.C. 278, 303, 406 S.E.2d 876, 890 (1991)). While defendant argues that prior assaults against the victim are not similar to the charge of murder, his focus on the details of the acts are misplaced. On the contrary:

"Rule 404(b) is a rule of *'inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show

that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.' "

*State v. Scott*, 343 N.C. 313, 330, 471 S.E.2d 605, 615 (1996) (quoting *State v. Weathers*, 339 N.C. 441, 448, 451 S.E.2d 266, 270 (1994)). Additionally, " '[e]vidence of another offense is admissible under Rule 404(b) so long as it is relevant to any fact or issue other than the character of the accused.' " *State v. Kyle*, 333 N.C. 687, 697, 430 S.E.2d 412, 417 (1993) (quoting *State v. Simpson*, 327 N.C. 178, 185, 393 S.E.2d 771, 775 (1990)).

The evidence of prior acts of domestic violence, namely assaults by defendant against the victim, his girlfriend, were both relevant and admissible in this case. Defendant was charged with first degree murder, requiring a showing of willfulness and malice aforethought. *See* N.C. Gen. Stat. § 14-17 (2001). Evidence of prior assaults against the victim hold a special place in the context of domestic violence:

> "In the domestic relation, the malice of one of the parties is rarely to be proved but from a series of acts; and the longer they have existed and the greater the number of them, the more powerful are they to show the state of [the defendant's] feelings." Specifically, evidence of frequent quarrels, separations, reconciliations, and ill-treatment is admissible as bearing on intent, malice, motive, premeditation, and deliberation.

*Scott*, 343 N.C. at 331, 471 S.E.2d at 616 (citations omitted) (finding testimony regarding prior violent acts towards wife was admissible under Rule 404(b) to prove issues in dispute such as malice, intent, premeditation, and deliberation) (quoting *State v. Moore*, 275 N.C. 198, 207, 166 S.E.2d 652, 658 (1969)); *see also State v. Syriani*, 333 N.C. 350, 376, 428 S.E.2d 118, 132 (1993) (holding that "testimony about defendant's misconduct toward his wife was proper under Rule 404(b) to prove motive, opportunity, intent, preparation, [and] absence of mistake or accident with regard to the subsequent fatal attack upon her"); *Simpson*, 327 N.C. at 185, 393 S.E.2d at 775 (holding that trial court did not err in admitting evidence of defendant's prior assault on the victim as it tended to establish malice, an issue relevant to a first degree murder charge). These cases provide precedent clearly indicating that when the spouse (or domestic partner, as in this case) is the victim, evidence of prior assaults by the accused against the victim are both relevant and admissible.

Additionally, defendant relies on Rule 403, which calls for the exclusion of relevant evidence "if its probative value is substantially

outweighed by the danger of unfair prejudice . . . ." N.C.R. Evid. 403. Any possible prejudicial effect of the evidence of defendant's prior assaults against the victim are outweighed by their probative value in determining whether the shooting was indeed an accident. Furthermore, "[w]hether to exclude evidence under Rule 403 is a matter left to the sound discretion of the trial court." *Stager*, 329 N.C. at 315, 406 S.E.2d at 897 (citing *State v. Coffey*, 326 N.C. 268, 281, 389 S.E.2d 48, 54 (1990)). Defendant has not shown that the trial court abused its discretion in admitting the evidence of defendant's prior assaults against the victim. Therefore, there was no error, much less plain error, in the admission of this evidence.

## II.

**[2]** Defendant next argues that the trial court erred by admitting hearsay statements by the decedent concerning her relationship with defendant, specifically regarding her fear of him. Since defendant did not object during trial to the admission of each of these statements, we must also review this argument using the "plain error" rule, as set forth in Part I of this opinion.

Defendant argues that the hearsay statements did not show the victim's state of mind and thus did not fall under the hearsay exception set forth in N.C. Rule of Evidence 803(3). On the contrary, Wylene's statements regarding her fear of defendant fall under Rule 803(3), since "[i]t is well established in North Carolina that a murder victim's statements falling within the state of mind exception to the hearsay rule are highly relevant to show the status of the victim's relationship to the defendant." *Scott*, 343 N.C. at 335, 471 S.E.2d at 618 (holding that testimony of several witnesses regarding conversations with the victim "related directly to [the victim's] fear of [the] defendant" and thus were "properly admitted pursuant to the state of mind exception"); *see also State v. Glenn*, 333 N.C. 296, 305, 425 S.E.2d 688, 694 (1993) ("[t]he victim's fear of defendant was relevant to show the nature of the victim's relationship with defendant and the impact of defendant's behavior on the victim's state of mind prior to the murder"). Here, defendant argued at trial that the shooting of Wylene was an accident. Testimony from a number of witnesses regarding the victim's fear of defendant tends to demonstrate a likelihood that her shooting was not an accident, thereby making the hearsay evidence relevant to show her state of mind. *See Stager*, 329 N.C. at 315, 406 S.E.2d at 897. Defendant also argues that the statements should have been excluded under Rule 403 because their prejudicial effect outweighed any probative value. However, "[w]hether to exclude evi-

dence under Rule 403 is a matter left to the sound discretion of the trial court." *Stager*, 329 N.C. at 315, 406 S.E.2d at 897 (citing *Coffey*, 326 N.C. at 281, 389 S.E.2d at 54). Thus, upon a complete review of the record in this case, we conclude that the trial court did not abuse its discretion in admitting these statements.

[3] Additionally, defendant argues that admission of this hearsay violated his right to confront his accuser under the Sixth Amendment of the United States Constitution and his rights under Article I, Section 23 of the North Carolina Constitution. However, we decline to address this contention because defendant cites no supporting case law for this argument, in violation of N.C. Rule of Appellate Procedure 28(b)(6) which requires "citations of the authorities upon which the appellant relies." N.C.R. App. P. 28(b)(6). In conclusion, the trial court did not err in allowing the State to elicit hearsay statements regarding the victim's state of mind (with respect to her fear of defendant) prior to her death.

III.

[4] Defendant further argues that the trial court erred in excluding opinion testimony of a lay witness regarding the possibility that defendant might feel some remorse for killing Wylene. Defendant alleges clear, plain and reversible error on the part of the trial court, arguing that the testimony of Brown should have been admitted under N.C. Rules of Evidence 701 and 803(3). Again, the "plain error" rule is set forth in Part I of this opinion.

Rule 701 requires that to be admissible, the lay opinion must be "rationally based on the perception of the witness" and "helpful to a clear understanding of [her] testimony or the determination of a fact in issue." N.C.R. Evid. 701. Defendant has not shown that either of the requirements of Rule 701 were met. If Brown's opinion had been based on first hand observations, it may have been admissible as a shorthand statement of fact under Rule 701. *See State v. Braxton*, 352 N.C. 158, 187, 531 S.E.2d 428, 445 (2000), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001); *Matheson v. City of Asheville*, 102 N.C. App. 156, 174, 402 S.E.2d 140, 150 (1991). Yet, there is no evidence in the record indicating that Brown had an opportunity to speak with or observe the defendant from the time that she saw him *before* the shooting and the day she testified at trial. For this very reason, Brown's testimony was also inadmissible under Rule 803(3), the state of mind hearsay exception, because Brown was being asked to give her opinion on a matter, not to repeat a hearsay statement of defend-

ant. After sustaining the State's objection, the trial court allowed the defense to pursue the inquiry of Brown on *voir dire*, where the extent of her testimony was, "I think if he could take it back, he would." This is not hearsay testimony regarding state of mind. Moreover, it is unclear how Brown's opinion was relevant to any facts at issue in the case. Thus, her testimony regarding the mere possibility that defendant might feel remorse was properly excluded, and because defendant has not shown that the jury would have found differently had it heard Brown's statement, the trial court did not commit error, much less plain error.

## IV.

[5] Defendant finally argues that the trial court erred in permitting the State to proceed on a short-form indictment. Defendant admits, however, that the North Carolina Supreme Court has upheld the use of short-form indictments such as the one used in this case. *See State v. Wallace*, 351 N.C. 481, 504-08, 528 S.E.2d 326, 341-43 (2000). Therefore, this assignment of error is without merit.

We conclude that defendant received a fair trial, free from error.

No error.

Judges BRYANT and ELMORE concur.