IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-190

Filed 20 February 2024

Rutherford County, Nos. 21CRS000166; 21CRS050135-37; 21CRS050151; 21CRS051895-96; 21CRS000597-99; 21CRS051981-83; 21CRS052031; 21CRS052064-65

STATE OF NORTH CAROLINA

v.

MITCHELL JOSEPH MARTIN

Appeal by Defendant from judgments entered 10 June 2022 by Judge Forrest D. Bridges in Rutherford County Superior Court. Heard in the Court of Appeals 28 November 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Chris D. Agosto Carreiro, for the State-Appellee.*

*Blass Law, PLLC, by Danielle Blass, for Defendant-Appellant.*

COLLINS, Judge.

Defendant Mitchell Joseph Martin appeals from judgments entered on jury verdicts of guilty of assault by strangulation inflicting serious bodily injury, assault with a deadly weapon inflicting serious injury, assault on a female, first-degree kidnapping, five counts of obstructing justice, and eight violations of a domestic violence protective order, and on Defendant's guilty plea to having attained habitual felon status. Defendant argues that the trial court erred by failing to dismiss certain

charges for insufficient evidence, admitting certain evidence, and failing to intervene ex mero motu in the State's opening statement and closing argument. Defendant also argues that he received ineffective assistance of counsel. We dismiss Defendant's ineffective assistance of counsel claim without prejudice and find no merit in his remaining arguments.

## I. Background

Defendant and Brandy Humphries started dating in November of 2019. Defendant picked up Brandy from her grandmother's house at around 8:30 p.m. or 9:00 p.m. on 13 January 2021 and took her to the trailer that they were fixing up. Shortly after returning to the trailer and smoking methamphetamine, at around 10 p.m., Defendant began "hearing somebody talking" and accused Brandy of wearing a wire to "get him in trouble" and of hiding someone under the couch.

Defendant tried to rip her hoodie off to see if she was wired. When this was unsuccessful, he used a DeWalt Sawzall to cut it off. Brandy was "scared to death[.]" Defendant had a look in his eye like "a demon" and hit Brandy in the head with a medium-sized metal flashlight. The flashlight "busted [her] head open" and she "started bleeding everywhere . . . ."

Brandy's head began to swell and she "was real woozy feeling" as "it was a lot of blood that was coming out of [her] head." Defendant told her she had "better not be getting any blood on the carpet" and attempted to stop the bleeding from her head using a white t-shirt. Because there was "a lot of blood . . . coming out of [Brandy's]

- 2 -

head," the blood soaked "right through" the t-shirt. Defendant began berating Brandy because her blood was on the carpet and the couch. Defendant tried to clean the blood off the carpet with the white t-shirt. When the t-shirt became saturated, Defendant ripped the sleeve from his hoodie and tried to use it to clean the blood.

After trying to clean the blood from the carpet, Defendant turned back to Brandy. He grabbed her and dragged her by the arm into the bathroom. He threw her into the freezing cold shower and sprayed her with water to clean the blood off. This occurred around 2:00 a.m. on 14 January 2021, several hours after he assaulted her with the metal flashlight.

While forcing Brandy to take a shower, Defendant hit her with the showerhead. Defendant dropped his cell phone. He blamed Brandy and punched her underneath her chin, in an upward motion, causing her tooth to cut through her lip.

Defendant pulled Brandy from the shower and forced her to sit naked in the middle of the living room floor. When she moved to try and warm herself with the blanket on the floor, Defendant kicked her and hit her with a metal chain.

Defendant thought she was trying to hide something with the blanket, so he got on top of her, wrapped his hand around her neck, and choked her. When she fought back by kicking him, he kicked her "with his boots on in the head and in the shoulder" and swung at her with his fists. At some point, Defendant choked Brandy until she passed out.

At around 9:30 a.m. or 10:00 a.m., Brandy's best friend, who was also Defendant's cousin, came to the house. Defendant let her in and left. The friend took Brandy to the courthouse to get a protective order and then to the hospital.

A domestic violence protective order was put in place on 21 January 2021 and was extended for a year to 10 February 2022. While Defendant was in custody and the protective order was in place, Brandy contacted Defendant's sister to get half of Defendant's stimulus check, which amounted to $300. On 10 May 2021, while Brandy was at Defendant's sister's house getting the stimulus money, Defendant called and she spoke on the phone with him; she took the money, decided not to come to court, and apologized to him. They told each other they loved each other. However, she later accused him of violating the protective order based on their 10 May 2021 phone call as well as a letter sent to her on 1 July 2021. Defendant was also accused of violating the order (and in some cases, obstructing justice) by sending letters to other people, including his own mother, expressing fear of being imprisoned for the rest of his life and asking for help.

The jury found Defendant guilty of assault by strangulation inflicting serious bodily injury, assault with a deadly weapon inflicting serious injury, assault on a female, first-degree kidnapping, five counts of obstructing justice, and eight violations of a domestic violence protective order. He subsequently admitted to having attained the status of habitual felon.

He was sentenced to 105 to 138 months' imprisonment for assault by strangulation and assault on a female. He was also sentenced to the following two consecutive sentences: 140 to 180 months' imprisonment for assault with a deadly weapon inflicting serious injury with habitual felon status, and 140 to 180 months' imprisonment for first-degree kidnapping. Lastly, he was sentenced to 105 to 138 months' imprisonment for obstructing justice and violation of a domestic violence protective order with habitual felon status, with all remaining convictions consolidated into that sentence.

Defendant gave oral notice of appeal on 10 June 2022.

## II. Discussion

### A. Motions to Dismiss

Defendant argues that the trial court erred by failing to dismiss the various charges of which he was found guilty. In his brief, Defendant presents the evidence not in the light most favorable to the State, as required, but instead in the light most favorable to him. Based on our review of the evidence under the proper standard, we find no merit in his contentions. We will address each charge in turn.

A trial court's denial of a motion to dismiss is reviewed de novo. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). Upon a defendant's motion to dismiss, the question for the trial court is whether there is substantial evidence of each essential element of the offense charged and whether defendant was the perpetrator of the charged offense. *Id.* "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192-93, 451 S.E.2d 211, 223 (1994) (citation omitted). Where substantial evidence exists, the trial court must deny a motion to dismiss. *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651-52 (1982).

### 1. *Assault*

The jury found Defendant guilty of three assault charges: assault by strangulation, for use of his hands around Brandy's throat; assault with a deadly weapon inflicting serious injury, for use of a metal flashlight; and assault on a female, for use of his open and closed fists. Defendant argues that all but one of these assault charges should have been dismissed because there was insufficient evidence of a distinct interruption between the assaults.

The common law offense of assault is defined as

> an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.

*State v. Dew*, 379 N.C. 64, 70, 864 S.E.2d 268, 273-74 (2021) (quotation marks and citation omitted). "[A]ssault is a broad concept that can include more than one contact with another person." *Id.* at 70, 864 S.E.2d at 274. "[T]he State may charge a defendant with multiple counts of assault only when there is substantial evidence that a distinct interruption occurred between assaults." *Id.* at 72, 864 S.E.2d at 275. Examples of a distinct interruption include "an intervening event, a lapse of time in which a reasonable person could calm down, an interruption in the momentum of the attack, a change in location, or some other clear break delineating the end of one assault and the beginning of another." *Id.*

Here, Defendant abused and terrorized Brandy over a twelve-hour period. During that time, Defendant (1) hit her in the head with a metal flashlight in the living room around 10:00 p.m., (2) punched her under the chin in the bathroom shower stall close to 2:00 a.m., and (3) put his hands on her neck and strangled her until she blacked out in the living room before dawn at approximately 5:30 a.m.

Each of these assaults is separated by distinct interruptions of time and location. The first assault at 10:00 p.m. and the second assault at 2:00 a.m. were separated by approximately four hours. The third assault occurred approximately three hours later, around 5:30 a.m. While all three assaults occurred in the trailer, they were at different and distinct locations: in the living room near the couch, in the bathroom shower stall, and finally pinned down on the living room floor.

This evidence, viewed in the light most favorable to the State, shows a "distinct

interruption" between the three assaults. Thus, the trial court did not err by denying Defendant's motion to dismiss.

### 2. *Assault with a deadly weapon inflicting serious injury*

Defendant next argues that the trial court erred by denying his motion to dismiss the charge of assault with a deadly weapon inflicting serious injury as there was insufficient evidence of a serious injury being caused by a metal flashlight.

The elements of assault with a deadly weapon inflicting serious injury "are (1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death." *State v. Aytche*, 98 N.C. App. 358, 366, 391 S.E.2d 43, 47 (1990); *see also* N.C. Gen. Stat. § 14-32(b) (2021). This Court has defined "serious injury" as an injury which is serious but falls short of causing death. *State v. Carpenter*, 155 N.C. App. 35, 42, 573 S.E.2d 668, 673 (2002). "Whether a serious injury has been inflicted depends upon the facts of each case and is generally for the jury to decide under appropriate instructions." *State v. Hedgepeth*, 330 N.C. 38, 53, 409 S.E.2d 309, 318 (1991) (citation omitted). "Pertinent factors for jury consideration include hospitalization, pain, blood loss, and time lost at work." *State v. Woods*, 126 N.C. App. 581, 592, 486 S.E.2d 255, 261 (1997) (citation omitted).

Here, the evidence, including testimony and photographs taken by law enforcement, showed that when Defendant hit Brandy in the head with the metal flashlight, she began to bleed profusely and to feel "woozy" while standing. The blood from her head soaked through a t-shirt and required additional fabric to clean it from

the carpet. When Brandy was speaking with law enforcement officers several hours after she was struck, she had swelling on her forehead and was unsteady on her feet. Furthermore, the symptoms observed by one of the officers were severe enough for the officer to send Brandy to the hospital for treatment.

This evidence, viewed in the light most favorable to the State, was sufficient evidence of a serious injury. Thus, the trial court did not err by denying Defendant's motion to dismiss the charge of assault with a deadly weapon inflicting serious injury.

### 3. *Assault by strangulation inflicting serious bodily injury*

Defendant next argues that the trial court erred by denying his motion to dismiss the charge of assault by strangulation inflicting serious bodily injury.

"[T]he offense of assault by strangulation requires only that an individual assault another person and inflict physical injury by strangulation." *State v. Brunson*, 187 N.C. App. 472, 478, 653 S.E.2d 552, 556 (2007) (citations omitted); *see also* N.C. Gen. Stat. § 14-32.4(b) (2021).

Here, Brandy testified that Defendant wrapped his hands around her neck and choked her at least twice. She further testified that Defendant strangled her until she began losing her vision and lost consciousness. Law enforcement officers at the scene documented injuries consistent with strangulation, including bruising on Brandy's neck, pain around her throat, and bruising around her ears. Subsequently, a detective observed bruising and marks on Brandy's neck and ears, and the detective testified that Brandy could "barely open her mouth very far because of the significant

pain that she was experiencing from" the strangulation. Brandy also told that detective that "she was having trouble swallowing and a tender throat as a result of the strangulation."

This evidence was sufficient to establish physical injury caused by strangulation. *See State v. Little*, 188 N.C. App. 152, 157, 654 S.E.2d 760, 764 (2008) (holding that "cuts and bruises on [the victim's] neck" confirmed by photographic evidence was sufficient evidence to satisfy the physical injury element of assault by strangulation); *State v. Braxton*, 183 N.C. App. 36, 43, 643 S.E.2d 637, 642 (2007) (holding that "evidence that defendant applied sufficient pressure to [the victim's] throat such that she had difficulty breathing" was sufficient to constitute strangulation).

Accordingly, the trial court did not err by denying Defendant's motion to dismiss the charge of assault by strangulation inflicting serious bodily injury.

### 4. *First-degree kidnapping*

Defendant argues that the charge of first-degree kidnapping should have been dismissed because the State failed to offer sufficient evidence that Defendant confined Brandy or that he did so for the purpose of facilitating a felony.

The elements of kidnapping are: (1) confining, restraining, or removing from one place to another; (2) any person sixteen years or older; (3) without such person's consent; (4) if such act was for the purpose of facilitating the commission of a felony. *See* N.C. Gen. Stat. § 14-39(a)(2) (2021). Kidnapping in the first-degree occurs when,

among other things, the victim is seriously injured. *See id.* § 14-39(b) (2021). Confining, restraining, or removing someone need not be accomplished through the use of "actual physical force or violence[;] . . . [t]hreats and intimidation are equivalent to the use of actual force or violence." *State v. Sexton*, 336 N.C. 321, 361, 444 S.E.2d 879, 901 (1994) (quotation marks and citations omitted).

In this case, there is substantial evidence that Defendant confined, restrained, and removed Brandy for the purpose of assaulting her with a deadly weapon inflicting serious injury and assaulting her by strangulation inflicting serious bodily injury. During the evening of 13 January 2021 and into the morning of 14 January 2021, Defendant physically confined and restrained Brandy to the trailer. Brandy testified that the back and front doors were both "screwed shut." She was terrified of Defendant based upon the physical abuse and threatening behavior he exhibited throughout the night. Within the closed trailer, Defendant first assaulted her with a metal flashlight inflicting serious injury. He then removed Brandy from the living room to the bathroom shower stall, where he assaulted her with his fist, and then removed her from the bathroom shower stall to the living room floor where he assaulted her by strangulation. Defendant then confined Brandy to sitting naked on the floor. Defendant used actual physical force and violence, as well as threats and intimidation, to restrain and confine Brandy inside the trailer.

Accordingly, the State presented substantial evidence to support the conclusion that Defendant confined, restrained, and removed Brandy by use of

physical violence and threats for the purpose of facilitating a felony. The trial court thus properly denied Defendant's motion to dismiss the charge of first-degree kidnapping.

### 5. *Ineffective assistance of counsel*

Defendant contends that he was deprived of his Sixth Amendment right to effective assistance of counsel because, during closing argument, his trial counsel conceded Defendant's guilt. Defendant specifically contends that his defense counsel's remarks amounted to per se ineffective assistance of counsel under *State v. Harbison*, 315 N.C. 175, 180, 337 S.E.2d 504, 507-08 (1985) (holding that a defendant receives per se ineffective assistance of counsel when "the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent").

We review de novo whether a defendant was denied effective assistance of counsel. *State v. Wilson*, 236 N.C. App. 472, 475, 762 S.E.2d 894, 896 (2014).

> Generally, th[e] Court indulges the presumption that trial counsel's representation is within the boundaries of acceptable professional conduct, giving counsel wide latitude in matters of strategy. To prevail on an ineffective assistance of counsel claim, a defendant must show that trial counsel's conduct fell below an objective standard of reasonableness. This requires a showing that, first, trial counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed the defendant by the Sixth Amendment, and second, this deficient performance prejudiced the defense, such that the errors committed by trial counsel deprived the defendant of a fair trial.

*State v. Goss*, 361 N.C. 610, 623, 651 S.E.2d 867, 875 (2007) (quotation marks and

internal citations omitted). However, under *Harbison*, "a defendant receives ineffective assistance of counsel *per se* when counsel concedes the defendant's guilt to the offense or a lesser included offense without the defendant's consent." *State v. Berry*, 356 N.C. 490, 512, 573 S.E.2d 132, 147 (2002) (citing *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507-08).

Here, Defendant testified in his defense and admitted to various actions. During closing argument, Defendant's trial counsel stated:

> We ask that you find him not guilty on all the felonies, the first-degree kidnapping, the assault with a deadly weapon inflicting serious injury, the assault with a deadly weapon, and assault by strangulations. He's admitted to doing the other stuff.

> We ask you to find him guilty on the misdemeanor assault on a female, misdemeanor Domestic Violence Protective Order violation, and misdemeanor obstruction of justice. Thank you.

Because the record is insufficiently developed to consider Defendant's ineffective assistance of counsel claim on this direct appeal, we decline to address this claim and dismiss it without prejudice. *See State v. Al-Bayyinah*, 359 N.C. 741, 753, 616 S.E.2d 500, 509-10 (2005) (dismissing ineffective assistance of counsel claim brought on direct appeal without prejudice to pursue collateral relief where "[t]rial counsel's strategy and the reasons therefor[e] are not readily apparent from the record, and more information must be developed to determine if defendant's claim satisfies the *Strickland* test"); *see also State v. House*, 340 N.C. 187, 196, 456 S.E.2d

292, 297 (1995) (dismissing *Harbison* claim brought on direct appeal without prejudice to pursue collateral relief where record was "silent as to whether defendant did or did not consent to his attorney's concession of guilt").

### 6. *Opening statement and closing argument*

Defendant argues that the trial court erred by failing to intervene ex mero motu during the State's opening statement and closing argument. Specifically, Defendant argues that intervention was required because the "State was deliberately appealing to the jurors' sense of passion and prejudice, in an improper attempt to lead them away from the evidence towards facts outside the record."

"Counsel are entitled to wide latitude during jury arguments; however, the scope of that latitude is within the discretion of the court." *State v. Trull*, 349 N.C. 428, 452, 509 S.E.2d 178, 194 (1998) (citation omitted). The standard of review is whether the statements made by the prosecution were so grossly improper that the judge is expected to intervene ex mero motu. *Id.* at 451, 509 S.E.2d at 193.

Defendant challenges as "grossly improper" several statements made by the State in both the opening statement and closing argument. We disagree with Defendant's characterization of the challenged statements. While the State argued passionately, it was within the bounds of decorum and propriety. The statements did not disparage Defendant personally nor did they speak to matters or events outside of the trial.

Accordingly, the trial court did not err by not intervening ex mero motu.

### 7. *Admission of 404(b) evidence*

Defendant finally argues that the trial court erred by improperly admitting evidence of alleged prior assaults against Brandy under Rules of Evidence 404(b) and 403.

This Court reviews a trial court's decision to admit evidence under Rules 404(b) and 403 by conducting distinct inquiries with different standards of review. *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012). The trial court's Rule 404(b) determination is reviewed de novo. *Id.* The trial court's Rule 403 determination is reviewed for abuse of discretion. *Id.*

Pursuant to Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2021). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." *Id.* This list "is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime." *State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 852-53 (1995) (citation omitted). Rule 404(b) is "a clear general rule of inclusion . . . ." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). Additionally:

> [e]vidence of prior assaults against the victim hold a special
> place in the context of domestic violence:

> In the domestic relation, the malice of one of the parties is rarely to be proved but from a series of acts; and the longer they have existed and the greater the number of them, the more powerful are they to show the state of the defendant's feelings. Specifically, evidence of frequent quarrels, separations, reconciliations, and ill-treatment is admissible as bearing on intent, malice, motive, premeditation, and deliberation.

*State v. Latham*, 157 N.C. App. 480, 484, 579 S.E.2d 443, 447 (2003) (quotation marks, brackets, and citations omitted).

Defendant challenges the admission of Brandy's testimony regarding the following acts:

On 1 July 2020, Defendant accused her of cheating on him while they were at his aunt's home. He beat her up "real bad"; he punched her so hard in the face that he broke her eye socket. He threw her in the shower because she was bleeding from where he had been beating her. She locked herself in the bathroom until his aunt arrived. The incident lasted from about 5:30 p.m. until about 10:00 p.m.

At the end of July 2020, Brandy and Defendant argued with each other in front of his mother, and his mother called the police. The police approached them as they were walking down the side of a road; Brandy lied and told them she was fine. After the police left, Defendant and Brandy resumed arguing. He told her to sit on a log and threatened to cut her arms off with a hatchet he was holding. When she accidentally caused a motion-activated light to illuminate, he hit her because he thought she did it on purpose.

In October 2020, while Defendant was trying to fix his aunt's truck, he accused Brandy of trying to get his cousin's phone number so she could cheat on him. They got in the truck together and drove off, but the truck broke down. He then dragged her through a field by her hair. They drove to a friend's house where he threw a coke bottle at her; the friend made him leave. When Defendant came back the next day, he accused Brandy of cheating with the friend because she was charging her phone in his truck. Defendant threw a phone at her face, hitting her, which caused the side of her face to turn black.

Brandy further testified that just before Christmas in 2020, Defendant beat her up again right after they got back together after having taken a break.

Defendant was charged with assault, which requires a "show of force or menace of violence . . . sufficient to put a person of reasonable firmness in fear of immediate bodily harm." *Dew*, 379 N.C. at 70, 864 S.E.2d at 274 (quotation marks and citation omitted). Defendant was also charged with first-degree kidnapping, which requires "confining, restraining, or removing [a person] from one place to another," N.C. Gen. Stat. § 14-39(a)(2), which can be accomplished through "[t]hreats and intimidation[,]" *Sexton*, 336 N.C. at 361, 444 S.E.2d at 901 (citation omitted). The prior bad acts illustrate that, over the course of roughly seven months, Defendant engaged in a pattern of violent, threatening, and controlling behavior when Brandy made him feel jealous or angry.

Defendant argues that "while intent is an element of each assault, [Defendant]

did not argue that he did not intend to assault her[.]" However, it was the State's burden to show intent and the State's evidence of Defendant's prior bad acts is directly relevant to this element. The prior bad acts also illustrate the manner and common scheme Defendant used to confine and abuse Brandy, and they negate any inference that Defendant acted in self-defense or that Brandy was somehow responsible for her own injuries based on Defendant's testimony that "it was both of us fighting." Because Defendant's conduct was admissible as proof of motive, intent, manner, and common scheme, Brandy's testimony was relevant for a purpose other than showing Defendant's propensity for violence. *See State v. Scott*, 343 N.C. 313, 331, 471 S.E.2d 605, 616 (1996) (holding that testimony regarding prior violent acts towards wife was admissible under Rule 404(b) to prove issues in dispute such as malice, intent, premeditation, and deliberation). Accordingly, the trial court did not err by admitting the evidence under Rule 404(b).

Furthermore, the trial court did not abuse its discretion by admitting the evidence under Rule 403. The record shows that the trial court carefully deliberated and made a well-reasoned decision. The 404(b) evidence was proffered outside of the jury's presence. The judge also asked to hear the evidence of the pending charges first before deciding the admissibility of the prior acts. The trial court gave a detailed explanation of how the 404(b) evidence would be admitted to show that all of the assaults were between Defendant and Brandy, a pattern of escalating behavior, intent, and to rebut Defendant's self-defense claim.

Accordingly, the trial court properly admitted the challenged evidence under Rules 404(b) and 403.

### III.   Conclusion

The trial court did not err by failing to dismiss certain charges for insufficient evidence, admitting certain 404(b) evidence, and failing to intervene ex mero motu in the State's opening statement and closing argument. We dismiss Defendant's ineffective assistance of counsel claim without prejudice.

NO ERROR IN PART; DISMISSED IN PART.

Judges CARPENTER and WOOD concur.