An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-966

Filed 4 March 2026

Beaufort County, Nos. 17CR052374-060, 17CR052376-060, 18CR050011-060

STATE OF NORTH CAROLINA

v.

JAYQUAN LAMAR NEWMONES, Defendant.


Appeal by defendant from judgment entered 21 September 2022 by Judge Eula E. Reid in Beaufort County Superior Court. Heard in the Court of Appeals 25 September 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Robert C. Montgomery, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Anne M. Gomez, for defendant-appellant.*

DILLON, Chief Judge.

Defendant Jayquan Newmones appeals the final judgment entered consistent with the jury's verdict finding him guilty of first-degree felony murder and felonious larceny. Defendant contends the trial court erred in numerous ways. For the

foregoing reasons, we conclude Defendant received a fair trial free from reversible error.

## I.    Background

On 10 September 2018, a grand jury indicted Defendant Jayquan Newmones for murder, armed robbery, and felonious larceny for killing Timothy "Bubba" Moore and stealing his wallet and other items.

At trial, the evidenced showed as follows:  Defendant and Bubba began hanging out together in late 2017.  On the evening of 23 December 2017, Bubba's cousin saw Bubba at the Speedway convenience store where she was working.  Bubba arrived at the store in a rented Toyota Camry.  He entered the store, withdrew eighty dollars from the ATM, paid for drinks and cigars, and exited the store.  While Bubba was in the store, his cousin was outside cleaning the gas pumps and saw Defendant in Bubba's car.  Bubba told her he would call her to pick her up from work to attend a party later that night.  She later tried multiple times to reach Bubba that night but was not successful.

The next day, Christmas Eve, Defendant's neighbor was informed about a car parked in the backyard of the house next door which the neighbor recognized to be Bubba's rented car.  Later that day, two of Bubba's family members working at a different Speedway gas station saw Defendant putting gas in Bubba's car.

That same day, police were notified about a body lying on a dirt path.  A deputy

arrived at the scene at approximately 4 pm and found Bubba's body seventy-five yards from a highway with his shirt pulled up around his chest and his pants pulled down with the pockets pulled out. Shell casings, cigarette butts, two bullets, orange peels, and a tobacco wrapper used for marijuana were also found at the scene.

After the deputy had arrived at the scene, a police officer and two criminal investigators arrived on the scene. The officer and one of the investigators identified the victim as Bubba.

The autopsy concluded that Bubba died from multiple gunshot wounds. He was shot fourteen times with a total of twenty-two entrances, grazes, and exit wounds. At trial, Defendant testified he fired the gun as self-defense out of fear for his life due to an altercation. Defendant also admitted at trial to lying to investigators and not fully cooperating with the investigation.

The jury initially found Defendant guilty of felony murder and of second-degree murder (killing without premeditation and deliberation), armed robbery, and felonious larceny. The trial court arrested judgment on second-degree murder and armed robbery (as this was the felony supporting the felony murder conviction). Since the jury returned separate verdicts for felony murder and for second-degree murder, the jury was given additional instruction and given the opportunity to deliberate again. After further deliberations, the jury found Defendant guilty of first-degree felony murder; and the trial court entered judgments on first-degree murder and felonious larceny. Defendant was sentenced to life imprisonment without parole and

a prison term of six to seventeen months.  Defendant appealed.

## II.    Analysis

Defendant raises seven issues on appeal.  We address each in turn.

### A.  Unanimous verdict

First, Defendant argues that this Court cannot be "confident" that the jury rendered a unanimous verdict of guilty of first-degree murder because the trial court accepted an incomplete verdict, the verdict sheet was coercive and defective, and the trial court failed to inform the jury it could find Defendant not guilty of felony murder. We disagree.

The North Carolina Constitution states "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court[.]" N.C. Const. art. I, § 24. *See also* N.C.G.S. § 15A-1237(b) (2005) ("The verdict must be unanimous, and must be returned by the jury in open court.").

Our "statutes do not specify what constitutes a proper verdict sheet [,] ... [n]or have our Courts required the verdict forms to match the specificity expected of the indictment." *State v. Floyd,* 148 N.C. App. 290, 295 (2002).  A verdict is deemed sufficient if it "can be properly understood by reference to the indictment, evidence and jury instructions." *State v. Connard,* 81 N.C. App. 327, 336 (1986).

Defendant did not object to the verdict sheet at trial.  Accordingly, we review for plain error.  Defendant bears the burden to show, not only error, "but that absent the error, the jury probably would have reached a different result."  *State v. Garcell,*

363 N.C. 10, 35 (2009).

Here, the jury initially returned a verdict of both guilty of first-degree felony murder and second-degree murder without premeditation and deliberation. After this, the trial court reinstructed the jury and allowed the jury to deliberate further. The jury then returned a verdict of first-degree felony murder. Based on a review of the record and arguments we hold that the verdict was proper and Defendant failed to meet his burden to show the jury probably would have reached a different result had the alleged error not been made.

Defendant also contends the verdict was not unanimous due to insufficient jury instructions. This argument is addressed later in this opinion.

## B. MAR and Evidentiary Hearing

Second, Defendant requests an evidentiary hearing and argues the trial court erred in striking the juror affidavits attached to Defendant's Motion for Appropriate Relief ("MAR").

Once a jury renders its verdict and is discharged, a court will typically not receive the testimony of said jurors to impeach the verdict. *See State v. Cherry*, 298 N.C. 86, 100 (1979). General Statute 15A–1240 codified this general rule and provided exceptions as follows:

> *Impeachment of the verdict.*—(a) Upon an inquiry into the validity of a verdict, no evidence may be received to show the effect of any statement, conduct, event, or condition upon the mind of a juror or concerning the mental processes by which the verdict was determined.

(b) The limitations in subsection (a) do not bar evidence concerning whether the verdict was reached by lot.

(c) After the jury has dispersed, the testimony of a juror may be received to impeach the verdict of the jury on which he served, subject to the limitations in subsection (a), only when it concerns:

> (1) Matters not in evidence which came to the attention of one or more jurors under circumstances which would violate the defendant's constitutional right to confront the witnesses against him; or

> (2) Bribery, intimidation, or attempted bribery or intimidation of a juror.

Rule 606 of our Rules of Evidence provides an additional exception to the general rule regarding the impeachment of verdicts:

> (b) *Inquiry into validity of verdict or indictment.*—Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

N.C.G.S. § 8C-1, Rule 606.

Defendant argues there were four jurors who signed affidavits stating they convicted Defendant of second-degree murder, not first-degree murder. However, Defendant fails to provide any argument that the jurors' affidavits contain any

evidence of extraneous prejudicial information or that any outside influence improperly brought to bear upon any juror. Therefore, we conclude the trial court did not err in striking the affidavits.

## C. Jury Instruction on Felony Murder

Defendant next argues the trial court erred by instructing the jury on the continuous transaction doctrine for felonious murder, failing to instruct the jury on the causal nexus requirement, and failing to instruct on self-defense as a defense to a single charge of murder.

We review preserved challenges to the trial court's jury instructions de novo. *State v. Osorio*, 196 N.C. App. 458, 466 (2009).

Here, the underlying felony for Defendant's felony murder charge was armed robbery. Our Supreme Court has stated when a jury finds a defendant guilty of robbery with a dangerous weapon, it means the jury determined beyond a reasonable doubt that the felonious conduct was causally connected to the circumstances giving rise to the shooting. *See State v. McLymore*, 380 N.C. 185, 199–200 (2022). In *McLymore*, our Supreme Court further held that "[b]ased upon the outcome of [the defendant's] trial, it is indisputable that there existed an immediate causal nexus between his felonious conduct and the confrontation during which he used assertedly defensive force, and the felony disqualifier applies to bar his claim of self-defense." *Id*. at 200.

Because the State proved to the jury's satisfaction that Defendant committed

the felony offense of robbery with a dangerous weapon and that led to the death of Bubba, Defendant cannot establish that he was prejudiced by the trial court's failure to provide a jury instruction on causal nexus or self-defense.

### D. Jury Instructions

Fourth, Defendant argues the trial court erred by failing to instruct the jury on voluntary manslaughter, that Defendant had no duty to retreat, and by failing to instruct jury that Defendant had to believe it was necessary to kill Bubba to claim self-defense.

Defendant did not object to these jury instructions. We therefore review them for plain error. *See State v. Lawrence,* 365 N.C. 506, 518 (2012). To show plain error, "a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.*

Here, although Defendant claims this alleged error had a probable impact on the jury's finding Defendant guilty, he fails to argue *how* the jury instructions created prejudice. In any event, we conclude Defendant has failed to show how any error in the instructions rose to the level of plain error.

### E. Admitted Evidence

Next, Defendant contends the trial court erred by admitting into evidence lyrics from a rap song written by Defendant and two screenshots from a music video

of the song showing Defendant brandishing weapons.  Defendant argues the evidence relating to the song was irrelevant and overly prejudicial under N.C.G.S. § 8C-1, Rules 401, 402, 403, and 404(b).

### 1. *Rule 401 and Rule 402*

For evidence to be considered relevant under N.C.G.S. § 8C-1, Rule 401, it must have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  "Generally, all relevant evidence is admissible."  *State v. Alston*, 341 N.C. 198, 236 (1995) (citing N.C.G.S. § 8C–1, Rule 402).  "This Court has interpreted Rule 401 broadly and has consistently stated that in criminal cases, every circumstance calculated to throw light on the alleged crime is admissible."  *Alston*, 341 N.C. at 236 (citing *State v. Collins,* 335 N.C. 729, 735 (1994)).

> Because the trial court is better situated to evaluate whether a particular piece of evidence tends to make the existence of a fact of consequence more or less probable, the appropriate standard of review for a trial court's ruling on relevancy pursuant to Rule 401 is not as deferential as the "abuse of discretion" standard which applies to rulings made pursuant to Rule 403.

*Dunn v. Custer*, 162 N.C. App. 259, 266 (2004) (citing *Alston*, 341 N.C. at 237).

The challenged evidence was relevant under Rule 401 and Rule 402.  After reviewing the record, transcripts, and arguments on appeal we hold this evidence was relevant to the issue of motive and intent.

### 2. *Rule 403 and Rule 404(b)*

Defendant argues that even if we hold the evidence is relevant, it is inadmissible under Rule 403 and Rule 404(b) because it is prejudicial and inadmissible evidence of prior bad acts.

"Rulings under North Carolina Rule of Evidence 403 are discretionary, and a trial court's decisions on motions made pursuant to Rule 403 are binding on appeal, unless the dissatisfied party shows that the trial court abused its discretion." *State v. Chapman*, 359 N.C. 328, 348 (2005) (citation omitted). "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Riddick*, 315 N.C. 749, 756 (1986) (citation omitted).

"When prior incidents are offered for a proper purpose, the ultimate test of admissibility is whether they are sufficiently similar and not so remote as to run afoul of the balancing test between probative value and prejudicial effect set out in Rule 403." *State v. West*, 103 N.C. App. 1, 9 (1991). "[E]very circumstance [] calculated to throw any light upon the supposed crime is admissible. The weight of such evidence is for the jury." *State v. Whiteside*, 325 N.C. 389, 397 (1989) (citation omitted).

"We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b)." *State v. Beckelheimer*, 366 N.C. 127, 130 (2012).

Our Supreme Court has consistently held that

> Rule 404(b) state[s] a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its

exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Coffey*, 326 N.C. 268, 278–79 (1990). Here, the State argues Defendant's prior actions of writing lyrics which show similarities between the lyrics and the facts of the relevant crime are relevant to show intent and motive. We agree with the State that the lyrics support showing intent and motive and the lyrics were not used *only* to show Defendant had the "propensity and disposition to commit an offense of the nature of the crime charged." *Id*. Further, Defendant failed to show the admission of evidence showing prior bad acts (the lyrics) was manifestly unsupported by reason.

Defendant has failed to show the trial court abused its discretion in allowing the admission of testimony regarding Defendant's prior bad actions under Rules 404(b) and 403. His arguments are overruled.

### F. Cumulative Error

Sixth, Defendant argues that the trial was "riddled with errors" which cumulatively deprived him of his due process right to a fair trial free from reversible error. "Cumulative error leads to reversal when taken as a whole [the errors] deprived the defendant of his due process right to a fair trial free from prejudicial error." *State v. Wilkerson*, 363 N.C. 382, 426 (2009) (quotation omitted). "[C]umulative error requires there be multiple significant errors before an appellate court can conclude that a defendant has met the high bar of demonstrating that he has been wholly 'deprived ... of his due process right to a fair trial free from prejudicial

error.'" *State v. Gillard*, 386 N.C. 797, 852 (2024) (internal quotation omitted).

However, when "none of the issues present error, [appellate courts will] decline to consider defendant's cumulative error argument." State v. Betts, 377 N.C. 519, 527 (2021).

Here, there can be no cumulative error, because the trial court did not err. Thus, we find no cumulative error.

## G. Appellate Rule 2

Finally, Defendant requests that this Court exercise its discretion to review any issues it finds not preserved under Rule 2 of our Rules of Appellate Procedure to prevent injustice to Defendant.

Rule 2 of our Rules of Appellate Procedure permits us to consider unpreserved arguments where review is necessary "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest." N.C. R. App. P. 2; *see State v. Radomski*, 294 N.C. App. 108, 112 (2024). However, our Supreme Court has instructed that Rule 2 may only be used in "exceptional circumstances." *State v. Campbell*, 369 N.C. 599, 603 (2017). Defendant failed to meet his burden of demonstrating how this case falls under "exceptional circumstances" warranting review. We decline to invoke Rule 2.

## III.    Conclusion

Based on the reasoning provided above, we conclude Defendant received a fair trial free of reversible error.

NO ERROR.

Judges ARROWOOD and MURRY concur.

Report per Rule 30(e).